SEBASTIAN INTERSIMONE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Intersimone v. Commissioner
Docket No. 11313-81.
United States Tax Court
T.C. Memo 1987-290; 1987 Tax Ct. Memo LEXIS 290; 53 T.C.M. (CCH) 1073; T.C.M. (RIA) 87290; June 10, 1987. Sebastian Intersimone, pro se. Michael A. Menillo, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: By notice of deficiency dated February 23, 1981, respondent determined deficiencies in petitioner's Federal income tax and additions to tax as follows: Additions to Tax
Year
Deficiency
[1] Sec. 6653(b) 1970
$4,915.20
$2,457.60
1971
15,007.00
7,503.50 1972
46,646.00
23,323.00
1973
6,755.94
3,377.97 1974
5,436.56
2,718.28 The issues for our consideration are (1) whether petitioner had unreported income for the taxable years 1970, 1971, 1972, 1973 and 1974 in the amounts determined by respondent; (2) whether any part of the underpayment of tax for each of the years here in issue is due to fraud with intent to evade tax under section 6653(b); and (3) whether assessment of additional tax for each of the years *292 in issue is barred by the statute of limitations. FINDINGS OF FACT None of the facts have been stipulated. Exhibits which were introduced by respondent at trial, consisting of documents summarizing petitioner's bank deposits and cash expenditures, as well as mortgage loan transactions and interest earned by petitioner for the taxable years in issue are incorporated herein by this reference. At the time he filed the petition in this case, Sebastian Intersimone (petitioner) resided at the Federal Correctional Institute, Lewisburg, Pennsylvania. Petitioner filed Federal income tax returns for each of the taxable years in issue with the Internal Revenue Service Center, Holtsville, New York. On his 1970, 1971 and 1972 income tax returns petitioner listed his occupation as "Sales." For the taxable years 1973 and 1974, no entry was made on petitioner's returns with respect to occupation. On his income tax returns filed for each of the years in issue, petitioner showed the following sources of income and adjusted gross income: 1970
1971
1972
1973
1974
Wages, salaries,
tips, etc.
$17,822 $68,005
$15,000
Dividends
1,058 1,439
2,891
6,271
7,177
Interest
609
1,041
691
2,350
Income other than
wages, dividends
and interest
(337)
161
1,480
5,000
Adjusted Gross Income
18,543 70,214
20,412
11,962
9,527
*293 In May 1974, petitioner filed an amended return (Form 1040X) for the taxable year 1973. On that amended return, petitioner reported additional income of $320 resulting from his failure to report a long-term capital gain on his original return, and an additional $13 in deductions. Petitioner paid an additional $80 in tax. During the taxable years in issue, petitioner had accounts with brokerage firms and bought and sold stocks. In 1972 petitioner formed a corporation, Berkshire Enterprises, for the purpose of buying land for development, although the corporation never engaged in any development activities. Petitioner was the sole shareholder of Berkshire Enterprises. Petitioner made loans to several persons in his capacity as an individual and through Berkshire Enterprises. Many of these loans were secured by interest bearing mortgages and notes. Petitioner personally received the loan repayment proceeds. Petitioner employed attorneys and accountants to handle his business dealings and tax matters during the years in issue. Petitioner's returns for 1970, 1971 and 1972 were prepared by Jack Diamond, a certified public accountant. Ben Malamoth, also an accountant, prepared *294 petitioner's returns for taxable years 1973 and 1974, including petitioner's amended return for taxable year 1973. Petitioner personally supplied his accountants with the income items to be included in his income tax returns. On April 5, 1976, petitioner was indicted by a grand jury in the Southern District of New York and charged with violations of the narcotics laws of the United States. In brief, the indictment alleged that, during the years 1968 to 1976, petitioner was a heroin supplier doing business in New York City. Petitioner was tried by a jury and found guilty. He was sentenced to 15 years and was released from prison on parole in 1982. During the course of the narcotics investigation leading to petitioner's subsequent indictment and trial, Special Agent Phillip Kirschen of the Internal Revenue Service examined petitioner's income tax returns for the years 1970 through 1974. Special Agent Kirschen reconstructed petitioner's income for those years by using bank deposits, cash expenditures and the specific or direct item method of proof. These computations were the basis for the statutory notice in issue in this case, [2] and are summarized as follows: 1970
1971
1972
1973
1974
Unexplained deposits
and currency
expenditures
$19,309.83 $26,772.51
$94,499.01
$17,707.44
$7,000.00
Interest income
78.13 150.44
1,016.72
8,236.12
Disallowed
capital loss
337.00 320.00
Interest expense
(338.00)
828.09
184.00
Disallowed
exemptions
1,500.00
Disallowed medical
expense-statutory
adjustment § 213
280.00
190.00
Taxable income
reported on return
15,339.00 63,603.00
6,695.00
6,556.00
4,401.00
Taxable income,
as revised
34,675.96 91,354.04
103,894.73
24,863.44
19,827.12
Understatement of
taxable income
19,336.96 27,751.04
97,199.73
18,307.44
15,426.12
*295 In his petition, petitioner asserted that the assessment of deficiencies and additions to tax for the years in issue were barred by the statute of limitations. Respondent answered and alleged that petitioner had filed false or fraudulent income tax returns for the years in issue with intent to evade taxes, thus tolling the statute of limitations under section 6501(c)(1) and that with respect to taxable year 1974 the tax due may also be timely assessed under section 6501(e)(1)(A). OPINION We must first determine whether petitioner failed to report income for the taxable years in issue. Where a taxpayer fails to keep proper records or if the taxpayer's returns do not correctly reflect his income, the Commissioner is expressly authorized to determine income by any method which, in his opinion, clearly reflects income. See Moore v. Commissioner,722 F.2d 193, 195 (5th Cir. 1984), affg. a Memorandum *296 Opinion of this Court; Harper v. Commissioner,54 T.C. 1121 (1970); Sutherland v. Commissioner,32 T.C. 862 (1959). The Commissioner has great latitude in adopting a method for reconstructing income. Giddio v. Commissioner,54 T.C. 1530, 1533 (1970)[3]. The reconstruction of income is generally employed where the taxpayer keeps no records or inadequate records, or where there is a strong suspicion that the taxpayer has received income from undisclosed sources. See United States v. Johnson,319 U.S. 503, 517-518 (1943); Jackson v. Commissioner,73 T.C. 394, 403 (1979). The burden of proving that respondent's reconstruction is erroneous rests with petitioner. Rule 142(a); Harper v. Commissioner,supra at 1129; Reaves v. Commissioner,31 T.C. 690 (1958), affd. 295 F.2d 336 (5th Cir. 1961). *297 At trial in the instant case, respondent's witness, Special Agent Phillip Kirschen, provided detailed testimony showing that respondent's determination of unreported income resulted from reconstructing petitioner's income based on bank deposits and cash expenditures for the taxable years 1970 through 1974. These determinations were made by analyzing actual bank records, deposit slips, and receipts, as well as underlying documentation obtained from brokerage accounts, loan accounts, and insurance accounts. Special Agent Kirschen also testified that respondent determined petitioner's interest income for the taxable years 1970, 1971 and 1972 and mortgage income for 1974 by analyzing mortgage statements, deeds and deposit records, as well as by interviewing individuals to whom petitioner had made loans. The use of such methods in computing income is well established and has been sanctioned by the courts. Taglianetti v. United States,398 F.2d 558 (1st Cir. 1968), affd. per curiam 394 U.S. 316 (1969); Llorente v. Commissioner,74 T.C. 260, 267 (1980), affd. in part, revd. in part 649 F.2d 152 (2d Cir. 1981) (cash expenditures *298 method); Halle v. Commissioner,175 F.2d 500 (2d Cir. 1949), affg. 7 T.C. 245 (1946), cert. denied 338 U.S. 949 (1950); Nicholas v. Commissioner,70 T.C. 1057, 1064-1065 (1978); Estate of Mason v. Commissioner,64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977) (bank deposits method); Schooler v. Commissioner,68 T.C. 867 (1977) (specific item method). See also Estate of Hague v. Commissioner,132 F.2d 775 (2d Cir. 1943), cert. denied 318 U.S. 787 (1943); Tokarski v. Commissioner,87 T.C. 74, 77 (1986)(bank deposits are prima facie evidence of the receipt of income). We find Special Agent Kirschen's testimony to be credible. In the instant case, petitioner offered no evidence to rebut respondent's determination of unreported income during the taxable years in issue. [4] His testimony throughout the trial was vague and indefinite. Petitioner admitted under oath, however, that during the years in issue he was a "bookmaker, *299 " that he received proceeds from a winning bet placed on a Mohammed Ali fight in 1970, [5] and that he was indicted and convicted of narcotics trafficking for those same years. Petitioner also testified that he had no regular employment during the taxable years in issue and that no income from the above-mentioned illegal activities was reported on his income tax returns for the taxable years in issue. Accordingly, in light of respondent's persuasive evidence coupled with petitioner's testimony, we uphold respondent's determination with respect to petitioner's unreported income. The next issue for our consideration is whether any part of the underpayment of tax for each of *300 the years here in issue is due to fraud with intent to evade tax. If we find that the underpayments of tax at issue herein are not due to fraud, such deficiencies are barred by the statute of limitations. Generally, the amount of any tax must be assessed within three years after a return is filed. Sec. 6501(a). However, the tax may be assessed "at any time" if respondent proves that the taxpayer's return was false or fraudulent with the intent to evade tax. Sec. 6501(c)(1). For the purposes of sections 6501(c)(1) and 6653(b), the fraud envisioned is defined as an actual, intentional wrongdoing with the specific intent to evade a tax believed to be owed. Wilson v. Commissioner,76 T.C. 623, 634 (1981); Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); McGee v. Commissioner,61 T.C. 249, 256 (1973), affd. 519 F.2d 1121 (5th Cir. 1975), cert. denied 424 U.S. 967 (1976). The burden that respondent bears of proving applicability of the section 6501(c)(1) *301 exception to the general three-year statute of limitations is the same burden as that which respondent bears in sustaining the additions to tax for fraud under section 6653(b). Ruidoso Racing Assoc., Inc. v. Commissioner,476 F.2d 502, 505 (10th Cir. 1973); Asphalt Industries, Inc. v. Commissioner,384 F.2d 229, 232 (3d Cir. 1967), revg. 46 T.C. 622 (1966). In short, respondent must show that the taxpayer intended to evade taxes known or believed to be owing by conduct calculated to conceal, mislead, or otherwise prevent the collection of such taxes. Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983); Stoltzfus v. United States,supra;Webb v. Commissioner,394 F.2d 366 (5th Cir. 1968), affg. a Memorandum Opinion of this Court. The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Rowlee v. Commissioner,supra;Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion *302 578 F.2d 1383 (8th Cir. 1978); Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969). Fraud is never presumed, but rather must be established by affirmative evidence. Beaver v. Commissioner,55 T.C. 85, 92 (1970). Respondent may carry his burden on the basis of reasonable inferences to be drawn from the record, but he may not rely on petitioner's failure to carry his burden of proof as to the underlying deficiencies. Habersham-Bey v. Commissioner,78 T.C. 304, 311-312 (1982). Moreover, as to the years in suit, respondent need only prove that "any part of any underpayment * * * is due to fraud." Sec. 6653(b)(1); Estate of Beck v. Commissioner,56 T.C. 297, 362 (1971). Direct proof of the taxpayer's intent is rarely available; therefore, fraud may be proved by circumstantial evidence. Spies v. United States,317 U.S. 492 (1943); Rowlee v. Commissioner,supra. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner,supra. *303 The burden is on respondent to prove, by clear and convincing evidence, that petitioner has an underpayment and that some part of the underpayment for each year in issue was due to fraud. Sec. 7454(a); Rule 142(b); Stone v. Commissioner,supra at 220. In the instant case it has been conclusively established that, in each of the years in issue, petitioner had income which was not reported in his respective Federal income tax returns. Thus, respondent has met his burden with respect to proving the existence of an underpayment for each of the years in issue. We must therefore consider whether any part of the underpayment for each year was due to fraud. In a number of cases it has been held that consistent and substantial understatement of large amounts of taxable income over a period of years in and of itself is strong evidence of fraud. Merritt v. Commissioner,301 F.2d 484 (5th Cir. 1962), affg. a Memorandum Opinion of this Court; Smith v. Commissioner,32 T.C. 985, 987 (1959). *304 In Merritt v. Commissioner,supra at 487, the court of appeals stated that: The mere understatement of income, standing alone, is not enough to carry the burden cast upon the Commissioner in seeking to recover fraud penalties. But each case is to be considered in the light of its own facts. Consistent and substantial understatement of income is by itself strong evidence of fraud. This proof, coupled with the showing that the records were both incomplete and inaccurate, and that the petitioner did not supply the bookkeeper with all of the data necessary for maintaining complete and accurate records, is enough to warrant the Tax Court in finding fraud. [Citations omitted.] Against the background of the above-stated principles, we must weigh the evidence in this case. The record here shows a substantial understatement of income for each of the years involved. Specifically, while petitioner reported income in amounts ranging from approximately $4,401 to $63,603 a year, including interest and dividend income, petitioner actually had additional income from unexplained bank deposits and currency expenditures ranging from $7,000 to $94,500, as well as additional *305 interest and mortgage income. Petitioner has offered no plausible explanation for his poor record keeping. Thus, we conclude from these facts that petitioner knew of the underreporting of his income. Knowingly underreporting income on a tax return is in itself a strong indication of fraud. Petitioner was indicted and convicted as a supplier of heroin doing business in New York City during the taxable years 1968 to 1976. Petitioner admitted at trial that he was also involved in illegal bookmaking activities and that he had income from those activities which he did not report on his income tax returns. Petitioner also stated that he had substantial gambling income during at least one of the years in issue which was not reported on his return. Petitioner further admitted that he knew certain of his activities were illegal and that gains from illegal activities should be reported. Moreover, the evidence in this case shows that petitioner failed to supply his accountants with all the necessary information pertaining to petitioner's various transactions. Therefore, we conclude that petitioner intended to evade taxes which he knew or believed he owed by conduct intended to conceal *306 the sources and amounts of his income and mislead or otherwise prevent the collection of said taxes. See Stoltzfus v. United States,supra;Korecky v. Commissioner,781 F.2d 1566, 1569 (11th Cir. 1986), affg. per curiam T.C. Memo. 1985-63. Upon consideration of the entire record, we hold that respondent has proved by clear and convincing evidence that petitioner's tax returns for the years 1970 through 1974 were filed with the fraudulent intent to evade taxes. Therefore, assessment and collection of the deficiencies for each of the years in issue is not barred by the statute of limitations, and we sustain the imposition of the additions to tax under section 6653(b). Furthermore, with respect to 1974, the six-year statute of limitations provided by section 6501(e) is also applicable because the gross income omitted from the return for that year was in excess of 25 percent of the gross income reported. [6] The analysis by respondent's agent shows unreported income of over $15,000 for 1974, whereas the return filed by petitioner reported income of $4,401. The return was filed in April of 1975, and the notice of deficiency was *307 sent to petitioner on February 23, 1981, within the six-year period required by section 6501(e). One final matter warrants brief discussion. In his petition, petitioner alleged that respondent erred in making adjustments and disallowing certain deductions in petitioner's returns. Petitioner, however, did not address these issues either at trial or in his memorandum of law. Petitioner bears the burden of proving that respondent's determination is erroneous. Welch v. Helvering,290 U.S. 111 (1933); *308 Rule 142(a). Because petitioner presented no proof with respect to those issues, respondent's determination is sustained. For the foregoing reasons, we sustain respondent's determinations as to deficiencies and additions to tax. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Former Revenue Agent Joseph Spignardo testified that he prepared the statutory notice of deficiency based on Special Agent Kirschen's report and supporting documents.↩
3. See Newton v. Commissioner,T.C. Memo. 1970-103 (barber's income determined by "towel count"); Nowland v. Commissioner,T.C. Memo. 1956-72, affd. 244 F.2d 450 (4th Cir. 1957) (gross winnings of numbers operator were constructed from the commission paid to his runners); Cipollone's Sales & Service, Inc. v. Commissioner,T.C. Memo. 1956-80 (average amount by which sales prices were understated ascertained for sales to purchasers, then this average amount multiplied by total number of cars sold to arrive at unreported income). Accord David v. United States,226 F.2d 331, 336↩ (6th Cir. 1955)(unreported income may be demonstrated by any practical proof that is available under the circumstances of the situation).
4. Attached to petitioner's memorandum of law, filed September 18, 1986, are copies of various documents, checks, correspondence between petitioner and his former attorney, among others, and materials relating to petitioner's trial on narcotics charges. After taking this additional information into consideration, however, none of the material casts any doubt on respondent's determination. ↩
5. Petitioner testified that he was not sure what amount he won, but indicated that $50,000 was a "ballpark" figure.↩
6. Section 6501(e)(1) (A) provides an exception to the general three-year statute of limitations where the taxpayer omits from gross income reported on a return properly included therein which is in excess of 25 percent of the amounts stated in the return. In such event, the tax may be assessed within six years after the return was filed. Respondent has the burden of proving the facts necessary to show that the six-year period of limitation applies. Bardwell v. Commissioner,38 T.C. 84, 92 (1962), affd. 318 F.2d 786↩ (10th Cir. 1963).