MILTON B. COOPER and ESTATE OF BERNICE COOPER, DECEASED, MILTON B. COOPER, EXECUTOR, Petitioners v COMMISSIONER OF INTERNAL REVENUE, Respondent
Cooper v. Commissioner
Docket No. 25524-83.
United States Tax Court
T.C. Memo 1987-431; 1987 Tax Ct. Memo LEXIS 428; 54 T.C.M. (CCH) 334; T.C.M. (RIA) 87431; August 27, 1987. Leonard Bailin, for the petitioners. John M. Elias and Richard Antonelli, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: By notice of deficiency dated June 3, 1983, respondent determined deficiencies in petitioners' Federal income tax and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(b) [1]
Sec. 6654(c)
1972
$  2,255
$ 1,128
$   3
1974
11,040
5,520
279
1975
8,513
4,257
340
1976
9,089
4,545
336
*430 After concessions by both parties, the issues remaining for our consideration are: (1) whether petitioners had unreported income for the taxable years 1972, 1974, 1975 and 1976 as determined by respondent; (2) whether petitioner Milton B. Cooper is liable for the additions to tax under section 6653(b); and (3) whether petitioners are liable for the additions to tax under section 6654(c) for the taxable years in issue. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. During this years in issue and at the time the petition in this case was filed, Milton B. Cooper resided in Yonkers, New York. His wife, Bernice Cooper, also resided in Yonkers, New York, during the taxable years at issue but was deceased at the time the petition was filed. Her interests in this matter are represented by her estate. Petitioners timely filed joint Federal income tax returns for the 1972, 1974, 1975 and 1976 taxable years. Because Bernice Cooper, as represented by her estate, is a party in this proceeding merely as a result of filing joint tax returns *431 with her husband, all future references to petitioner refer to Milton B. Cooper. Petitioner was a shareholder, officer and manager of William Cooper and Sons, Inc., an appliance store located in Mount Vernon, New York. Petitioner reported his salary from this appliance store as income on the returns for each of the years at issue. On the joint returns petitioner reported adjusted gross income in the amounts of $ 6,998, $ 3,838, and $ 16,505 and $ 38,533 for the taxable years, 1972, 1974, 1975 and 1976, respectively. Petitioner is a high school graduate and has completed two years of liberal arts study at New York University. During the taxable years in issue, Bernice Cooper was a full-time homemaker. During each of the taxable years at issue, petitioner had winnings and losses from wagering which were not reported on the joint tax returns. [2] With the exception of some losing tickets for 1974 and 1975, petitioner kept no records of his wins and losses. Petitioner, however, maintained an account at an Offtrack Betting Parlor (OTB). Annual activity in that account is reflected below: Year
Deposits
Withdrawals
Net Winnings or Losses
1974
$  3,500
$ (6,500)
$ ( 3,098.70)
1975
6,495
--
6,716.10 1976
7,239
--    7,178.10 $ 17,234
$ (6,500)
$  10,795.50 *432 Gambling expenditures, other than those shown above, were incurred in 1974, 1975 and 1976 in the amounts of $ 18,433, $ 791 and $ 13,055, respectively. In addition, petitioner made several payments to "touters," individuals or companies that provide tips or information regarding horse races and who are generally paid ten percent of the proceeds from a successful bet. Petitioner did not report any income or losses from gambling activities. Petitioner employed an accountant, Ms. Barbara Kaufman, to prepare the joint income tax returns for the taxable years at issue. Petitioner did not disclose his gambling activities to Ms. Kaufman when the returns were prepared but after he received notice of the investigation of his 1972 return, petitioner informed Ms. Kaufman that he had unreported income from gambling. On or about March of 1977, respondent began investigating petitioner's income tax returns. For the tax year 1972, respondent recomputed petitioner's income for that year using the specific *433 item method. These computations are the basis for the statutory notice of deficiency and are summarized as follows: 1972
Adjusted Gross Income (as reported)
$ 6,998.00
Add: Income from Forms 1099
Off Track Betting
3,006.90
Off Track Betting
2,262.30
Off Track Betting
1,203.30
Yonkers Raceway
1,957.50
Roosevelt Raceway
2,824.20
Roosevelt Raceway
890.00
Total Adjusted Gross Income
$ 19,142.20
Respondent recomputed petitioner's income for the years 1974, 1975 and 1976 using the bank deposits plus cash expenditures method. The computations are the basis of the statutory notice of deficiency at issue in this case and are summarized as follows: 1974
1975
1976
Total Deposits
55,991.30 $ 64,036.69 $ 67,499.92 Total cash Expenditures
21,233.00 9,000.00 15,855.00 total Deposits & Cash Expenditures
$ 77,224.30 $ 73,036.69 $ 83,304.92 Less: Non-Income Items [3]
(18,009.66)
(16,841.39)
(8,237.85)
Net Deposits
$ 59,214.64 $ 56,195.30 $ 75,067.07 Add:   Net OTB Telephone
Account Winnings
3,098.70 --
--
Total Gross Income
$ 62,313.34 $ 56,195.30 $ 75,067.07 Less: Sources of Income per Return
(16,691.80)
(20,265.35)
(41,396.15)
Revised Unreported Income
$ 45,621.54 $ 35,929.95 $ 33,670.92 *434 In the notice of deficiency respondent did not allow any deductions for wagering losses. OPINION
Unreported Income
The first issue for our consideration is whether petitioner had unreported income in the amounts as determined by respondent for the taxable years 1972, 1974, 1975 and 1976. Petitioner has the burden of proving that respondent's determination of his *435 tax liability in the statutory notice of deficiency is not correct. Welch v. Helvering,290 U.S. 111, 115 (1933); Rockwell v. Commissioner,512 F.2d 882 (9th Cir. 1975), affg. a Memorandum Opinion of this Court; Rule 142(a). A taxpayer is required to maintain records sufficient to show whether or not he is liable for Federal income taxes. Sec. 6001. It is well established that where the taxpayer fails to maintain adequate records, the Commissioner may prove the existence and amount of unreported income by any method that will, in his opinion, clearly reflect the taxpayer's income. Sec. 446(b); Holland v. United States,348 U.S. 121, 130-132 (1954); Harper v. Commissioner,54 T.C. 1121 (1970). Two methods of reconstruction of income which have received judicial approval are the specific item method, Schooler v. Commissioner,68 T.C. 867 (1977), and the bank deposits plus cash expenditure method, Estate of Granat v. Commissioner,298 F.2d 397 (2d Cir. 1962). See also Nicholas v. Commissioner,70 T.C. 1057, 1065 (1978); *436 Estate of Mason v. Commissioner,64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977); Gromacki v. Commissioner,361 F.2d 727, 728-729 (7th Cir. 1966). For the taxable year 1972, respondent used the specific item method. The income as reported on the 1972 joint income tax return was adjusted by adding gambling winnings which were reported on Forms 1099 from Off Track Betting, Yonkers Raceway and Roosevelt Raceway to petitioner but not shown on the return. For 1974, 1975 and 1976, respondent used the bank deposits plus cash expenditures reconstruction method. The premise underlying this method of income reconstruction is that, absent some explanation, a taxpayer's bank deposits represent taxable income. The total of all deposits is determined by the Commissioner to arrive at the taxpayer's income. An adjustment is then made to eliminate deposits that reflect non-income items such as gifts, loans and transfers between various bank accounts. Cash expenditures are then added to bank deposits to determine gross income. The Commissioner will also make a further adjustment for the taxpayer's ascertainable business expenses, *437 deductions, and exemptions. See Percifield v. United States,241 F.2d 225 (9th Cir. 1957); Gromacki v. Commissioner, supra;Harper v. Commissioner, supra at 1129. Where respondent has employed these methods in his determination of the deficiencies, the burden of proof rests with petitioner to show that such determinations are erroneous. Rule 142(a); Harper v. Commissioner, supra at 1129. The Commissioner is not required to prove that all deposits constitute taxable income. Gemma v. Commissioner,46 T.C. 821, 833 (1966). The burden of showing duplications is on the taxpayer, Zarnow v. Commissioner,48 T.C. 213, 216 (1967). Based on the record before us, we conclude that petitioner has not carried his burden of proof in this case. During the taxable years in issue, petitioner was a manager and shareholder of a family-run appliance business. As indicated by the activity in his OTB account he gambled frequently, with mixed results. Petitioner, throughout the course of this proceeding, *438 had various inconsistent explanations for the source of the additional income as determined by respondent. [4] While admitting that he had additional income from gambling, petitioner claimed at trial that his winnings were always exceeded by his losses. Moreover, petitioner maintained at trial that the source of the bank deposits resulted from cash gifts given to him by his in-laws, Benjamin and Rose Geller (the Gellers). These gifts were allegedly taken from a safety deposit box maintained by the Gellers. [5] Petitioner testified initially that he drove his wife to the bank 7 to 10 times a year over a period of years to make the withdrawals. On cross-examination, petitioner increased the frequency of the alleged trips to once a week. Yet despite the alleged frequency of these trips, he was unable to remember the name or exact location of the bank. *439 Petitioner's explanation as to the source of the unreported income was vague, rambling, inherently improbable and lacks credibility. This Court need not accept uncorroborated, self-serving testimony. Geiger v. Commissioner,440 F.2d 688 (9th Cir. 1971). It is inconceivable that he could have participated in retrieving money from a safety deposit box so frequently over a long period of time and be unable to remember the name or location of the bank. Because petitioner has not provided any credible explanation nor has he presented any records or testimony which would establish that the amounts were nontaxable gifts, we conclude that petitioner had unreported income from his gambling activities. Because we have determined that petitioner had wagering income and because he asserted at trial that his losses exceeded winnings, we now must address the issue of whether petitioner is entitled to any deductions for these alleged losses. Section 165(d) permits the deduction of "Losses from wagering transactions * * * only to the extent of the gains from such transactions." Petitioner *440 has the burden of proving that his alleged losses in fact occurred. Stein v. Commissioner,322 F.2d 78 (5th Cir. 1963), affg. a Memorandum Opinion of this Court. Because there are unreported winnings, petitioner must establish that his losses exceeded the unreported winnings in order to be entitled to deduct any such losses. Schooler v. Commissioner,68 T.C. 867, 869 (1977). The issue is a factual one, to be decided on the basis of all the evidence. Schooler v. Commissioner, supra;Fogel v. Commissioner,237 F.2d 917 (6th Cir. 1956), affg. per curiam a Memorandum Opinion of this Court; Green v. Commissioner,66 T.C. 538, 545 (1976). However, in this case, petitioner has presented no evidence concerning the extent of his losses for the years at issue. Petitioner kept no records as required by section 6001 and the regulations thereunder. [6] Although his OTB account shows losses, however, it is only a partial record of his gambling activities. *441 We recognize that this Court has applied the rule of Cohan v. Commissioner,39 F.2d 540, 543-544 (2d Cir. 1930), to estimate the amount of losses incurred despite the absence of adequate records. See Green v. Commissioner, supra at 548; Drews v. Commissioner,25 T.C. 1354 (1956). Before we will apply the Cohan rule, however, there must be sufficient evidence in the record to show some losses were in fact sustained. Schooler v. Commissioner, supra at 871. Stein v. Commissioner, supra at 83. The record in this case, however, leaves us with no satisfactory basis for estimating the amount of total losses nor does it convince us that losses exceeded petitioner's unreported gains. We therefore decline to apply the Cohan rule in this case. Accordingly, we conclude that petitioner has not met his burden of proof in regard to this issue and that he is taxable on the unreported gambling winnings in the amounts determined by respondent.
Fraud
The next issue for our consideration is whether any part of the underpayment for each of the years in issue is due to fraud with intent to *442 evade tax. Section 6653(b) provides, in part, that "If any part of any underpayment * * * of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment." Respondent bears the burden of proving by clear and convincing evidence that petitioner has an underpayment, and that some part of the underpayment is due to fraud. Sec. 7454(a); Rule 142(a). Affirmative proof of an underpayment is a necessary element of respondent's burden of proof. To prove an underpayment, respondent is not required to establish the precise amount of deficiency determined by him. Respondent cannot, however, satisfy his burden by relying solely on petitioner's failure to discharge his burden of proving error in his determination of the deficiency. Otsuki v. Commissioner,53 T.C. 96, 106 (1969); Pigman v. Commissioner,31 T.C. 356, 370 (1958). Pursuant to the terms of section 6653(b), the fraud addition to tax attaches to the entire underpayment even though only a portion of it is actually attributable *443 to fraud. Asphalt Products Co. v. Commissioner, 482 U.S.    (1987), affg. in part, revg. in part, and remanding in part 796 F.2d 843 (6th Cir. 1986), affg. a Memorandum Opinion of this Court; Mensik v. Commissioner,328 F.2d 147, 150 (7th Cir. 1964), affg. 37 T.C. 103 (1962); Breman v. Commissioner,66 T.C. 61 (1976); Stewart v. Commissioner,66 T.C. 54 (1976). In the instant case it has been conclusively established that, in each of the years at issue, petitioner had income which was not reported on his respective Federal income tax returns. Therefore, we must consider whether any part of the underpayment for each year was due to fraud. The issue of fraud poses a factual question which is to be decided on an examination of all the evidence in the record. Plunkett v. Commissioner,465 F.2d 299, 303 (7th Cir. 1972), affg. a Memorandum Opinion of this Court; Stone v. Commissioner,56 T.C. 213, 224 (1971); Stratton v. Commissioner,54 T.C. 255 (1970). *444 Fraud is an actual intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing. Webb v. Commissioner,394 F.2d 366, 367 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Powell v. Granquist,252 F.2d 56, 60 (9th Cir. 1958); Estate of Pittard v. Commissioner,69 T.C. 391, 400 (1977); McGee v. Commissioner,61 T.C. 249, 256-257 (1973), affg. 519 F.2d 1121 (5th Cir. 1975). Direct proof of the taxpayer's intent is rarely available, therefore, fraud may be proved by circumstantial evidence. Spies v. United States,317 U.S. 492 (1943); Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983); Stone v. Commissioner, supra at 223-224; Otsuki v. Commissioner, supra.
A number of cases have held that consistent and substantial understatement of large amounts of taxable income over a period of years, in and of itself, is strong evidence of fraud. Merritt v. Commissioner,301 F.2d 484 (5th Cir. 1962), affg. a Memorandum Opinion of this Court; Smith v. Commissioner,32 T.C. 985, 987 (1959). *445 In Merritt v. Commissioner, supra at 487, the Fifth Circuit stated that: The mere understatement of income, standing alone, is not enough to carry the burden cast upon the Commissioner in seeking to recover fraud penalties. But each case is to be considered in light of its own facts. Consistent and substantial understatement of income is by itself strong evidence of fraud. This proof, coupled with the showing that the records were both incomplete and inaccurate, and that the petitioner did not supply the bookkeeper with all of the data necessary for maintaining complete and accurate records, is enough to warrant the Tax Court in finding fraud. The above stated principles must be weighed against the evidence in this case. The record here shows a substantial understatement of income for each of the years involved. Specifically, while petitioner reported income in amounts ranging from $ 6,998.00 to $ 41,396.15 a year, petitioner actually had additional income from unexplained bank deposits and cash expenditures of $ 59,214.64 to $ 75,067.07 a year. At trial, petitioner admitted that he had income from gambling. While maintaining that his losses exceeded his *446 winnings from these activities he has produced no records which support this contention. In view of petitioner's level of education and business acumen, petitioner knew or should have known that income from gambling activities must be reported for income tax purposes. Petitioner also failed to disclose that he had unreported income to his tax return preparer, Ms. Kaufman. At trial Ms. Kaufman testified that when she questioned petitioner about his ability to maintain his life style on his reported income, he initially told her that his income was supplemented by loans from his father-in-law. Upon receiving notice of the IRS's audit of his 1972 return he told Ms. Kaufman the reason for the discrepancies in income was due to his gambling activities, but that his gambling losses always exceeded his winnings. While petitioner contended that he followed the advice of his accountant and return preparer this advice and the subsequent information listed in the joint returns was based on petitioner's misleading and untrue statements concerning his gambling activities. A taxpayer's failure to supply complete information about his income and expenses to his tax return preparer is a further *447 indication of fraud. Korecky v. Commissioner,781 F.2d 1566, 1569 (11th Cir. 1986), affg. per curiam a Memorandum Opinion of this Court; Merritt v. Commissioner, supra at 487. Upon consideration of the entire record, we hold that respondent has shown that petitioner's tax returns for the years 1972, 1974, 1975 and 1976 were filed with the fraudulent intent to evade tax. Therefore, we sustain the imposition of the additions to tax under section 6653(b). [7]
Estimated Tax
The final issue for our consideration is whether respondent correctly determined that petitioner failed to pay estimated tax on his unreported gambling income for the tax years in issue. Section *448 6654 imposes an addition to tax where there is an underpayment of estimated tax by an individual. Section 1.6654-2, Income Tax Regs., provides exceptions to the general tax made equals or exceeds the lessor of the amount of tax shown on the return for the preceding taxable year or if the estimate comprises 80 percent of the tax due on an estimated basis for each quarter. We note that section 6654 has no provision relating to reasonable cause and lack of willful neglect. Its application is mandatory and extenuating circumstances are irrelevant. Estate of Ruben v. Commissioner,33 T.C. 1071, 1072 (1960). Petitioner has the burden of proving error in respondent's determination. Welch v. Helvering, supra;Rule 142(a). The additions to tax are imposed due to an underpayment for which petitioner has failed to carry the burden of proof. Additionally, petitioner has brought forth no evidence to indicate and the record as presented provides no basis for inferring that either of the stated exceptions would apply. Therefore, we sustain respondent's determination. To reflect the concessions by the parties and the foregoing, *449 Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years here in issue, and all Rules references refer to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. From 1971 to 1979, petitioner was involved in the purchase and training of 12 race horses. These activities were reported on petitioners' joint tax returns and are not at issue. ↩
3. Non-Income Items:
1974
1975
1976
Loans
$ 5,116.66
$ 9,565.02
$ 4,300.00
Credit memos
168.00
237.37
--
Federal tax refund
1,708.00
1,846.00
211.00
Refund of gambling losses
1,397.00
1,048.00
1,030.00
Cash withdrawals savings
2,120.00
285.00
375.00
Checks payable to cash
--
1,000.00
180.00
O.T.B. check withdrawals
6,500.00
--
--
Cash on hand
1,000.00
1,000.00
1,000.00
Repayment of personal loans
--
--
100.00
Madison Sq. Garden reimbursement
--
860.00
860.00
Proceeds -- death of horse
--
1,000.00
--
Travel agency refund
--
--
154.00
Payment from Gellers --
--
27.85
Total
$ 18,009.66
$ 16,841.39
$ 8,237.85↩
4. According to Internal Revenue Service Special Agents Alvin Goldberg and William Sembler, who testified at trial, petitioner vacillated between claiming that the deposits were from checks written by his father-in-law, Benjamin Geller, withdrawals from the Gellers' savings accounts, and cash from a safety deposit box maintained by his mother-in-law, Rose Geller. However, extensive analysis of the eight savings and two checking accounts by the special agents showed that all savings withdrawals were deposited in the checking accounts of the Gellers and checks were written only for their personal expenditures. With the exception of checks made out to cash totaling approximately $ 100 and a check for $ 27.85 written to Bernice Cooper, the Gellers made no checks out to petitioner or Bernice Cooper. ↩
5. The Gellers operated a retail liquor store from 1940 to 1968 in Yonkers, New York. In 1968, due to a condemnation for road construction, Mr. Geller sold the property for $ 56,000 and retired. Petitioner asserted that the proceeds from the sale and accumulated income formed the cash horde which generated the gifts. ↩
6. See sec. 1.6001-1(a), Income Tax Regs. The Commissioner has suggested that gamblers regularly maintain diaries of winnings and losses to comply with sec. 6001. See Rev. Proc. 77-29, 1977-2 C.B. 538↩. 7. The statute of limitations is normally a 3-year period. Sec. 6501(a). In this case, petitioner did not plead the statute of limitations, an affirmative defense, and we conclude that he has waived the statute of limitations defense. However, even if such defense had been raised in the pleadings, where respondent proves fraud no statute of limitations applies. Sec. 6501(c).↩