LUANNE McCANLESS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; TOMLIN LEONARD McCANLESS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Petitioner
McCanless v. Commissioner
Docket Nos. 29538-84; 33728-84.[1]
United States Tax Court
T.C. Memo 1987-573; 1987 Tax Ct. Memo LEXIS 573; 54 T.C.M. (CCH) 1111; T.C.M. (RIA) 87573; November 18, 1987. Virginia Kinkead for the petitioner Luanne McCanless. J. Floyd Pew for the petitioner Tomlin Leonard McCanless. Nancy Hale, for the respondent. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined deficiencies [2] in and additions to petitioners' Federal income tax in the following amounts for the following years: Luanne McCanless (hereinafter sometimes referred to as petitioner-wife) Additions to Tax
Year
Deficiency
Sec. 6653(a) [3]
1978
$    774.74
$ 158.71
1979
11,349.40
708.38
*575 Tomlin Leonard McCanless (hereinafter referred to as petitioner-husband) Additions to Tax
Year
Deficiency
Sec. 6653(a)
1978
$  1,858.75
$ 212.91
1979
16,998.85
990.00
1980
3,790.36
189.52
1981
649.33
-
Additionally, in an amendment to his answer, respondent determined liability for additions to tax under section 6651(a)(1) for failure to file timely returns against Luanne and Tomlin McCanless in 1978 for $ 68.54 and $ 1,030.54 respectively, and against Tomlin McCanless in 1980 for $ 379.04. After concessions, [4] the issues remaining for decision are (1) whether Tomlin McCanless underreported his wagering income in 1979 and 1980; [5]
(2) whether Tomlin McCanless can deduct any of the following amounts in the respective taxable years; (A) 1980 business expense for money confiscated ($ 4,816.00), and automobile confiscated ($ 3,247.00); (B) 1980 business expense for "pool hall cost of sales" ($ 1,100.00); (C) 1980 loss from the disposition of his interest in a pool hall; (D) 1980 loss to a person identified as "Junior Moore"; (E) 1981 bad debts; (F) 1981 expenses for legal and professional *576 services; (3) whether Luanne and Tomlin McCanless filed joint income tax returns for the 1978 and 1979 tax years; (4) whether part or all of the underpayments of tax for 1978, 1979 and 1980 tax years were due to negligence or intentional disregard of Internal Revenue rules and regulations; and (5) whether petitioners filed their 1978 tax return and whether Tomlin McCanless filed his 1980 tax return after the due date. FINDINGS OF FACT Some of the facts are stipulated and are so found. The stipulation of facts and exhibits are incorporated herein by this reference. Luanne McCanless *577 resided in Leachville, Ark., and Tomlin McCanless resided in Blytheville, Ark. at the time they filed their petitions in the case. They are now divorced. Luanne and Tomlin McCanless were legally married during the 1978 and 1979 taxable years. During that time and through 1981 Tomlin McCanless was engaged in illegal bookmaking while Luanne McCanless stayed home and cared for their young son. Since Luanne McCanless was not employed outside the home she had no individual income. Tomlin McCanless first started in the bookmaking business in 1978 working for another person. During this time he did not take bets on any sporting events. Instead, he placed bets on his employer's behalf so the employer got a better point spread than he would otherwise obtain. In 1979, petitioner-husband broke out on his own and started his own bookmaking operation. He took bets on professional, semi-professional and collegiate sports. The majority of his activities centered around basketball, football and baseball. Petitioner-husband had some regular customers and others that placed bets sporadically. Many bets were placed in person, but a majority of bets came in over the telephone. As *578 a result, petitioner-husband went out every day and paid off customers who won and collected from customers who lost. Many customers either were unable or refused to pay their debts. To the extent petitioner-husband maintained records of his bookmaking business, they usually reflected whether a customer had won or lost. However, this was not always the case. The records were incomplete in other ways also. That is, not all bets placed with him were recorded. Between 1979 and 1980 an undercover agent placed bets with petitioner-husband using the name of "Johnny Barren." That name did not appear anywhere in the records. Tomlin McCanless did not limit his participation in the gambling business to bookmaking. Depending on the location of the operation, he also conducted poker, craps, dominoes, pool, pinball and video games. Petitioner-husband kept no records of these gambling activities even though he occasionally participated in the games. For example, he claims that a "Junior Moore" owes him $ 5,710.00 from a poker game, but he has no records to substantiate his testimony. Between 1979 and 1981 petitioner-husband ran his gambling business out of three different locations. *579 He first started taking bets at T & G Mobile Homes in Blytheville, Ark. Then, for a period of about 90 days, he took bets at the Neon Gallery in Blytheville. Eventually Tomlin McCanless, his brother Gary Don, and Jerry Bo Hollingsworth purchased a lease to a pool hall also known as the Blytheville Recreation Center. The three men paid $ 15,000 for the lease and the Center's inventory on February 28, 1980. [6]
The recreation center was, in many ways, an ordinary business venture. While the activity engaged in (gambling) was illegal, petitioner-husband also apparently sold beer on the premises. Petitioner-husband failed to maintain adequate records of the legal aspect to the business. He had no invoices of purchases, no cancelled checks from payment made and no log or ledger which reflected money spent on keeping the bar stocked. On March 27, 1980, law enforcement officials raided all three locations where petitioner-husband had operated. During *580 the raid the officers recovered $ 4,816.00 in cash, an automobile, and all of the books and records from the bookmaking operation. As a result of the raid, Tomlin McCanless was convicted of keeping a gambling house in violation of Arkansas law. [7]
After the recreation center was raided petitioner-husband was temporarily out the bookmaking business. In the summer of 1980 he got a job as the manager of the Sonic Drive-In located in Marion, Ark. Apparently, he was a trusted employee at Sonic Drive-In. Not only did he write his own salary checks, but he also determined the amount he should be paid. He worked at Sonic Drive-In for 45 to 60 days and was paid approximately $ 300.00 per month. He did not report this income on his 1980 tax return. Petitioner-husband also purchased a Federal wagering stamp for the first time between March 27 and September of 1980. After purchasing the tax stamp and leaving Sonic Drive-In petitioner-husband reopened his gambling business. This new operation, which was still in violation of Arkansas law, was conducted out of his home and continued through 1981. The items seized in the March 27, 1980 raid *581 included all of petitioner-husband's books and records. The Arkansas law enforcement officials subsequently turned the binder, notebooks and some betting slips over to respondent. Revenue Agent Pitts reconstructed petitioner-husband's wagering income using this information. The books covered wagers placed with petitioner-husband between 1979 and March 27, 1980 but did not reflect any winnings from any other gambling activities such as poker or dominoes. Mr. Pitts made a careful review of all the information provided to him. Most of the items were undated. Mr. Pitts determined that the three ring binder represented a portion of wagers made in 1979 and that the 13 spiral notebooks represented a portion of wagers made in 1980. He was able to make this determination because a few items dated 1979 appeared in the black binder and few dated 1980 appeared in the spiral notebooks. All of Mr. Pitts' calculations were based upon information contained in petitioner-husband's books and records. Thus, even though respondent knew the records did not list all bets placed with petitioner-husband and that the records did not contain information on the non-bookmaking gambling activities, *582 and even though petitioner-husband reopened his gambling business in September of 1980, respondent did not increase wagering income unless the increase was supported by information actually contained in the books. Mr. Pitts cross-checked information from the betting slips against information contained in the records. There was no duplication. Mr. Pitts also offset wagering income by losses and did not include any "we bets" [8] or "lay-off bets" [9] in his recalculation of taxable income. He also did not include money earned at Sonic Drive-In in his recalculation of taxable income. Petitioner-husband's wagering income was increased $ 300.00 in 1978; $ 25,618.00 in 1979; and $ 14,239.13 in 1980. [10] The 1978 increase was agreed to at trial leaving only the 1979 and 1980 increases in dispute. Petitioner-husband disputes Mr. Pitts' findings in determining his wagering income, but offered no documentary evidence to support his position. He attempted at trial to *583 introduce the books and records which had been seized in the raid in 1980 as well as books he had compiled "from memory" while his books were in the Government's possession. However, the books were excluded from evidence under Rule 104(c)(2) because petitioner-husband had violated a court order directing that the records be turned over to respondent by March 7, 1986 in compliance with Rule 72. [11] Consequently, petitioner-husband was unable to substantiate most of his claims at trial. *584 Tomlin McCanless did file Federal income tax returns for the years in question. He filed the 1978 tax return with the Internal Revenue Service Center on January 29, 1980. Three months after his bookmaking place was raided, he filed a Form 1040X amending the 1978 tax return. He filed a Form 1040 for the 1979 taxable year on July 17, 1980. He filed the 1980 return on July 14, 1981. The 1978 and 1979 returns listed the filing status as "married filed joint return." Luanne McCanless did not sign any of the tax returns at issue, even though her named appeared in the signature box. At her ex-husband's request, she did sign and file an administrative protest and appeal during audit. [12] She and petitioner-husband also signed consents to extend the limitations period for assessment of taxes for the 1978 and 1979 taxable years. On two of the consents to extend the statutory time limit [13] petitioner-wife added a statement that she had not signed either the 1978 or the 1979 Federal income tax return. In addition, petitioner-wife sent a handwritten statement to the Internal Revenue Appeals Office in which she swore that she had not signed the 1978 and 1979 tax returns, did not authorize *585 anyone to sign her name and had no knowledge that anyone had signed her name on those returns. OPINION Before trial petitioner-husband submitted a motion to remove the presumption of correctness of the Revenue Agent's report and the statutory notice of deficiency. He sets forth several reasons why the presumption should be removed. In essence, petitioner-husband argues that (1) the determination was wrong and (2) respondent's agents did not operate properly at the administrative level. Both of petitioner-husband's contention would require us to go behind the notice of deficiency, which is contrary to the general rule of this Court. Proesel v. Commissioner,73 T.C. 600, 606 (1979); Greenberg's Express, Inc. v. Commissioner,62 T.C. 324, 327 (1974); Human Engineering Institute v. Commissioner,61 T.C. 61, 66 (1973). *586 The rationale of this rule is that trials in this Court are de novo proceedings. Our determination is based on the merits of the case, not on a record developed at the administrative level. Greenberg's Express Inc. at 328. A narrow exception to this rule may exist in those cases where the respondent's deficiency is determined to be arbitrary. Jackson v. Commissioner,73 T.C. 394 (1979). In this case, however, since petitioner-husband admits he was involved in gambling and he was convicted under Arkansas law, and since respondent relied exclusively on records maintained by petitioner-husband in recomputing income and disallowing deductions, no reasonable basis exists to find respondent's determination to be arbitrary. As such, no basis exists for removing the presumption of correctness from respondent's determination. The first substantive issue is whether petitioner-husband underreported his income for the 1979 and 1980 taxable years. Respondent's increase in wagering income is presumed to be correct and petitioner bears the burden of proving it erroneous. *587 Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). When a taxpayer fails to maintain complete and adequate books and records, respondent may use any method which clearly reflects income to reconstruct taxable income. Harbin v. Commissioner,40 T.C. 373, 377 (1963). Respondent's method of reconstructing income was reasonable in this case. The Revenue Agent used petitioner-husband's books and records to reconstruct taxable income, cross-checked them against one another to avoid duplication and did not include any "we bets" or "layoff bets" in recomputing taxable income. Mr. Pitts deducted all reported wagering income from the total reconstructed wagering income. Moreover, not all of petitioner-husband's income was recorded in his books. Any inaccuracy that may exist in this case results from petitioner-husband's failure to maintain accurate books and records, not from respondent's actions. Petitioner-husband contends respondent made several mistakes in recomputing taxable income. For example, he claims that certain bets which were not listed either as wins or losses were totally included as wins. This, however, is a problem of petitioner-husband's *588 own making. Also, petitioner-husband has never indicated the amount of the bets which were erroneously included in income. Instead he makes bald assertions that his statement of wagering income is correct with no documents whatsoever to support his declaration. Under these circumstances we conclude that petitioner-husband has failed to meet his burden of proof and respondent's recomputation of taxable income for 1979 and 1980 must stand. Petitioner-husband is also subject to self employment tax on wagering income. The next issue is whether petitioner-husband is entitled to any of his claimed deductions for 1980 and 1981. None of the deductions in issue were claimed on his Federal income tax return. Rather, these deductions were claimed for the first time in the petition. Petitioner-husband claims entitlement to bad debt deductions for 1981. [14]Section 166 permits a taxpayer to deduct bona fide obligations which become worthless during the year. The bad debt claim in this case appears to be just another attack on respondent's determination of wagering income. The fact that petitioner-husband *589 testified at trial that amounts read into the record by his counsel were still owing to him does not satisfy us that it is so. Again, there were absolutely no corroborating testimony or documentation. And, again petitioner-husband attempted to place the burden on respondent to prove that no bad debt existed. We reiterate that the burden of proof lies with petitioner, and he has failed to meet this burden as it applies to his bad debt deductions for 1981. Petitioner-husband also claimed a *590 deduction of $ 1,100 for cost of goods sold in 1980. The only evidence of this expense was his uncorroborated testimony. While petitioner-husband asserts that he sold beer at the Blytheville Recreation Center, we do not know how much merchandise was purchased and what it cost. Petitioner-husband did not maintain records for any of these purchases. Neither did we have a starting or ending inventory as required by section 471. Thus, petitioner-husband's total lack of evidence prevents us from making a reasonable estimate of the cost of goods sold. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Petitioner-husband claimed a loss on the disposition of the lease to the pool hall. He claims he sold the lease to one Johnny Rankin. We have seen no evidence of this sale. Not only was there no bill of sale, but there was also no corroborating testimony from the alleged purchaser. Since there is no evidence a sale took place, we disallow any claimed loss for its disposition. Moreover, even if the sale of petitioner-husband's interest actually did occur in 1980, he has failed to substantiate that his adjusted basis in the lease exceeded any amount he may have received. *591 Petitioner-husband also claims a business deduction of $ 4,816 for money confiscated when his gambling establishment was raided. Section 162 generally permits deductions for ordinary and necessary business expenses. Section 162(f), however, specifically disallows a deduction "for any fine or similar penalty paid to a government for the violation of any law." The record is unclear as to what actually happened to the $ 4,816.00 confiscated in the raid on March 27, 1980. Petitioner-husband has not presented any evidence which suggests the money was not in fact a fine, or that if not, it was not used to reduce his actual or potential liability for a fine or penalty. [15] Since we have no contrary evidence and we know the state has the authority to impose a fine for a gambling infraction [16] we assume the $ 4,816.00 was a fine and is therefore not deductible. *592 Petitioner-husband's automobile was also seized during the raid. Unlike the cash, however, the automobile was returned in February 1982. Petitioner-husband claims a deduction in the amount of $ 3,247.00 for the time the automobile was in the state's possession. He did not claim this loss on his Federal tax return for 1980 or 1981. Additionally, we do not know how he arrived at this figure. We do not know if this is intended to be depreciation while in the state's possession, or loss on its disposition when allegedly sold to petitioner-husband's criminal defense attorney for $ 500.00, or something else. In any event, even if a deduction were allowable in this circumstance, without any evidence as to adjusted basis, we are unable to estimate the amount of a deduction. Petitioner-husband claims a loss in the amount of $ 5,710.00 to a "Junior Moore." The facts underlying this alleged loss are unclear. Apparently, however, the loss was ultimately attributable to a poker game. We note that in recomputing wagering income the Revenue Agent did not include any gains from poker. Because petitioner-husband has unreported winnings, under section 165(d) he must show his loss exceeded *593 such unreported winnings before he may deduct the loss against recomputed wagering income. Schooler v. Commissioner,68 T.C. 867 (1977). Petitioner-husband has failed to make this showing. Therefore, he is denied any deduction for a gambling loss to Junior Moore. Finally, petitioner-husband claims legal expense deductions for the 1980 taxable year. Section 162(a) authorizes a taxpayer to deduct all ordinary and necessary business expenses. Absent a statute or regulation denying a claimed deduction or frustration of clearly defined national or state policies proscribing particular types of conduct, we should not narrow the scope of the general rule. Commissioner v. Tellier,383 U.S. 687, 694 (1966). In this case petitioner-husband was engaged in an unlawful business enterprise. He incurred legal costs in defending against criminal prosecution for that activity. The criminal prosecution was directly related to his trade or business. As such, a deduction for legal expenses should ordinarily be allowed. Commissioner v. Tellier,383 U.S. 687, 691 (1966); *594 United States v. Gilmore,372 U.S. 39, 49 (1963); Johnson v. Commissioner,72 T.C. 340, 348 (1979). In this case, however, petitioner-husband has failed to substantiate his claimed deduction. [17] He has not presented a bill for legal expenses nor has he offered testimony from the attorney who defended him. Thus, we have no evidence on which to base a reasonable estimate for a deduction. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). In this instance as with most other expenses or claimed deductions, even though petitioner-husband may not have had contemporaneous documents to substantiate his claim, he could have had witnesses corroborate transactions which he claimed had occurred, and he was not precluded by the Court from offering their testimony. Since he failed in all cases to present corroborating testimony, we *595 can only assume it would not have supported his claim. Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Therefore, in light of the total lack of evidence, we are unable to allow any deductions based solely on petitioner-husband's questionable credibility. The next question in this case is whether Luanne and Tomlin McCanless filed joint Federal income tax returns in 1978 and 1979. This determination depends upon the intent of the parties. We consider the facts and circumstances surrounding the filing of the return to discover the parties' intent. Helfrich v. Commissioner,25 T.C. 404, 407 (1955). Superficially, it appears that the McCanlesses did file joint income tax returns for 1978 and 1979. Both their names appeared on the return and in the signature boxes. However, Luanne McCanless never signed the return, never authorized another to sign in her place and was unaware that the return had even been filed. She was a thoroughly credible witness and we accept her testimony. *596 The fact that petitioner-wife signed a protest and appeal after receiving the deficiency notice does not ratify the signing of her name on the 1978 and 1979 returns. See Helfrich v. Commissioner,25 T.C. at 407(signing of power of attorney and consent relating to 1947 taxable year not deemed to be admission that return in question we intended as a joint return). We conclude that petitioner-wife did not intend to file a joint income tax return with petitioner-husband for 1978 and 1979. Moreover, since petitioner-wife did not have any income of her own, she was exempt from the filing requirements. [18] As a result, we find that petitioner-wife is not liable for any deficiency in the 1978 or 1979 taxable years nor is she liable for any deductions to tax associated with the tax returns filed for those years. *597 With regard to petitioner-husband, respondent determined additions to tax under Section 6653(a) for negligence or intentional disregard of rules or regulations. Petitioner-husband has the burden of proof on this issue. Bixby v. Commissioner,58 T.C. 757 (1972). He has offered no evidence to contradict respondent's determination. Therefore, the additions to tax under section 6653(a) must stand. Finally, in an amendment to his answer respondent determined additions to tax under section 6651(a) for failure to file a timely return. As a new matter, respondent bears the burden of proof. Rule 142(a). To meet the burden respondent must prove that the returns were filed late and that the late filing was due to willful neglect. Bruner Woolen Co.,6 B.T.A. 881, 882 (1927). Respondent has shown that Tomlin McCanless' Federal income tax returns for the years in question were filed late, but has failed to present any evidence on the issue of petitioner-husband's reasons *598 for the late filing. Thus, respondent has failed to meet his burden of proof as to the additions to tax for delinquency. [19]
To reflect the foregoing, Decision will be entered for petitioner Luanne McCanless in docket No. 29538-84.
Decision will be entered under Rule 155 in docket No. 33728-84 with respect to Tomlin Leonard McCanless.
Footnotes
1. The deficiencies and additions to tax determined against Luanne McCanless are at issue in docket No. 29538-84. The deficiencies and additions to tax determined against Tomlin Leonard McCanless are at issue in docket No. 33728-84. Since the only issue involving Tomlin Leonard McCanless, this Court granted the motion to consolidate the two dockets for trial, briefing and opinion. ↩
2. Respondent took inconsistent positions with respect to filing status in determining deficiencies due from Luanne and Tomlin McCanless. The computations of deficiencies for Luanne and Tomlin McCanless in the 1978 and 1979 taxable years were based upon "married filing joint return" filing status. The computations of deficiencies due from Tomlin McCanless were based upon "married filing separate return" filing status in the 1978 and 1979 taxable years. ↩
3. Unless otherwise indicated, all section references are to the Internal revenue Code as applicable to the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
4. Since the notice of deficiency was sent the parties have conceded the following amounts in issue: ↩
1978
1979
1980
1981
Wagering Income
$ 300.00
Wagering Expenses
[1,414.00]
[3,082.00]
Schedule C Expenses:
Wagering-Telephone
1,164.42 493.12
Wagering-Utilities
1,800.00 Pool Hall-Rent
400.00 Wagering Auto Expense
1,833.00
Gain on Sale of Residence
4,000.00 5. Petitioner-husband has conceded that he would be subject to self-employment tax for the amount of increase in wagering income, if any. ↩
6. The Bill of Sale, in fact, did not even mention the lease to the premises. Instead, on its face, the document indicates that Tomlin McCanless, his brother, and Mr. Hollingsworth paid $ 15,000 for the contents of the Center. ↩
7. Ark. Stat. Ann. sec. 41-3251 (1977). ↩
8. A "we bet" means that petitioner-husband was betting for his own account. ↩
9. A "lay-off bet" was a bet made from petitioner-husband's own account with the purpose of covering payouts he might owe his customers. ↩
10. Mr. Pitts calculated the increase for each of the years in question. After determining the amount of wagering income he subtracted the amounts actually reported on tax returns as wagering income and amounts reported as commissions on sales of mobile homes. ↩
11. On January 19, 1986, respondent wrote to petitioner-husband's counsel arranging a conference for January 30, 1996, and informally requesting documents. Neither petitioner-husband nor his counsel attended the conference and they never rescheduled the conference. As a result respondent served petitioner-husband with interrogatories pursuant to Rule 71 and requests for the production of documents pursuant to Rule 72 on February 14, 1986. Petitioner-husband answered some of the interrogatories but in his response he indicated he would not provide the requested documents. On March 26, 1986, respondent moved to compel production of documents and responses to interrogatories. The Court granted the motion on April 16, 1986 and ordered petitioner-husband to produce the information sought on or before May 7, 1986. Petitioner-husband did not comply. In the motions filed March 26, 1986 respondent also sought the imposition of sanctions against petitioner-husband for failure to comply. The Court set a hearing on the imposition of sanctions for May 19, 1986. Respondent requested that the case be dismissed. The Court chose not to impose this ultimate sanction and instead prohibited petitioner-husband from introducing any documents into evidence which had not been provided to respondent per the terms of the this Court's order. ↩
12. Petitioner-husband had also filed another protest and appeal on his own in response to the deficiency notice. ↩
13. Luanne McCanless signed 5 separate consents to extend the statutory time limit. The 2 in which she added the statement were signed on May 14, 1983. ↩
14. Petitioner-husband never claimed a bad debt deduction on his Federal income tax return. This issue of bad debts arose after respondent determined a deficiency in petitioner-husband's income. In his brief, petitioner-husband makes long winded arguments that these amounts were originally bad debts but after respondent changed petitioner-husband from the accrual method to the cash method these amounts were more properly exclusions from income. In the text we refer to these amounts as bad debts but do not find that respondent ever changed petitioner-husband's method of accounting. As with most issues in this case, petitioner-husband presented no evidence to substantiate this claim. ↩
15. Petitioner-husband testified that the $ 4,816 was seized by law enforcement officers and turned over to the Internal Revenue Service. There is no evidence corroborating petitioner-husband's testimony, nor is there other evidence indicating what happened to the money. ↩
16. In its judgment against petitioner-husband in State of Arkansas v. Tommy McCanless,↩ the State imposed a one year suspended sentence conditioned on the payment of a $ 2,500 fine. 17. Petitioner testified that he incurred $ 400 in legal expenses in 1979, $ 3,000 in legal expenses in 1980 and $ 1,500 in legal expenses in 1981. In his petition he claimed $ 5,000 in legal expenses in 1981 and he failed to claim any legal expenses on his 1979, 1980 or 1981 Federal income tax returns. ↩
18. Since we have determined that Luanne McCanless did not file a joint return with her husband in 1978 and 1979, the "married filing separate return" tax rates would apply. In 1978 Luanne McCanless would be subject to income tax only if her income exceeded $ 1,600. Similarly, in 1979 she would only be subject to tax if her income exceeded $ 1,700. ↩
19. Pickett v. Commissioner,T.C. Memo. 1975-33↩.