IDOWU FAMUYIWA AND FLORENCE FAMUYIWA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Famuyiwa v. Commissioner
Docket No. 4296-90
United States Tax Court
T.C. Memo 1991-570; 1991 Tax Ct. Memo LEXIS 618; 62 T.C.M. (CCH) 1265; T.C.M. (RIA) 91570; November 25, 1991, Filed *618 Decisions will be entered under Rule 155. Idowu Famuyiwa, pro se. Alan S. Kline, for respondent. BEGHE, Judge. BEGHE
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies and additions to petitioners' Federal income taxes as follows: Additions to Tax, secs.
Tax
6653(a)(1)/
6653(a)(2)/
Year
Deficiency
6651(a)(1)[1]
(a)(1)(A)
(a)(1)(B)
6661
1985
$ 19,084
$ 830
$ 966
*
$ 4,710
1986
91,754
--
4,588
*
22,939
Respondent and petitioner have resolved all Schedule C deduction issues for both tax years. The only issues left unresolved are: (1) The amount by which the gross gambling income of petitioner Idowu Famuyiwa *619 (petitioner) exceeded his gambling losses for 1986; (2) whether petitioner underreported his taxable income for 1986 due to negligence or intentional disregard of rules or regulations, so as to be liable for an addition to tax under section 6653(a); (3) whether petitioner substantially understated his income tax for 1986, so as to be liable for an addition to tax under section 6661; and (4) whether petitioners are jointly liable for an addition to tax under section 6651(a)(1) for failing to file their 1985 return in timely fashion. Some of the facts have been stipulated and are so found. We incorporate the stipulation of facts and attached exhibits. Because petitioner filed his 1986 Federal income tax return "married filing separately," our decision with respect to that year binds only him, and not his ex-wife, petitioner Florence Famuyiwa. Our decision regarding 1985 applies to both petitioners. FINDINGS OF FACT Petitioners resided in Inglewood, California, when they filed their petition in this case. On January 4, 1986, petitioner won $ 192,372 on two bets at a thoroughbred racetrack. He promptly deposited the proceeds in his checking account at Century Federal Savings and *620 Loan Association. During the remainder of 1986, petitioner had no additional net gambling income and insubstantial or negative income from other sources. Petitioner was a compulsive gambler during 1986. During January 1986 petitioner drew three checks totaling $ 120,055.60 on his checking account, and lost the major part of the proceeds of these checks gambling in Las Vegas, Nevada, where he played blackjack and craps and bet on horse races. Subsequent to January 4, 1986, petitioner made a total of $ 172,470.05 in cash withdrawals, as set forth in the appendix. Many of the withdrawals occurred at or near racetracks or casinos. Petitioner continued to gamble several times a week, for the most part at Southern California racetracks, and took at least 2 additional trips to gamble in Las Vegas. Petitioner spent part of the proceeds of his 1986 gambling winnings on the following items: Truck
$ 8,400
Gifts
500
Repayment of outstanding loans
15,000
Unimproved real estate
3,000
Total
$ 26,900
Petitioner also invested $ 20,000 of his gambling winnings by opening an account with Prudential Bache, a securities broker. Petitioner had access to this account by obtaining *621 cash advances against a Prudential Bache credit card. He lost no more than $ 10,000 of that amount in gambling. During 1986, petitioner had personal expenditures of $ 25,000 paid out of gambling winnings. Petitioner spent $ 13,692 of his gambling winnings on business expenditures (in addition to the truck) during 1986, which helped to fund petitioner's loss from the operation of his small contracting business. In sum, at least $ 75,592 of the $ 192,372 petitioner won at the track on January 4, 1986, was not lost by gambling, so petitioner might have had as much as $ 116,780 of net gambling losses subsequent to his big winnings. Petitioners' 1985 joint Federal income tax return was filed on May 1, 1986, more than 2 weeks late. ULTIMATE FINDINGS OF FACT Applying the rule of Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), we find that petitioner had gambling losses of $ 100,000 during the taxable year 1986, resulting in taxable income from gambling of $ 92,372. We also find that petitioner has failed to sustain his burden of proof so that he is liable for the various additions to tax in amounts appropriate to the redetermined deficiencies arising from the *622 parties' concessions and our finding of the amount of his gambling losses for 1986. OPINION Allowable Gambling Deductions
Section 165(d) provides for a deduction for losses from gambling transactions, to the extent of gains from such transactions. Respondent's determination disallowing petitioner's deduction is presumptively correct. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933). Petitioner has the burden of establishing that he sustained the gambling losses respondent disallowed. Norgaard v. Commissioner, 939 F.2d 874 (9th Cir. 1991), affirming in part and reversing in part a Memorandum Opinion of this court; Schooler v. Commissioner, 68 T.C. 867, 869 (1977); Rule 142(a). Section 6001 requires taxpayers to keep records adequate to substantiate their income and deductions. When a taxpayer fails to keep such records, but a court is convinced deductible expenditures were made, the court "should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making." Cohan v. Commissioner, supra at 544. In gambling cases, this Court *623 has invoked the rule of Cohan only when it is convinced that petitioner incurred some gambling losses. See Drews v. Commissioner, 25 T.C. 1354 (1956); Doffin v. Commissioner, T.C. Memo 1991-114; Forman v. Commissioner, T.C. Memo 1988-64; Kalisch v. Commissioner, T.C. Memo 1986-541, affd. without published opinion 838 F.2d 461 (3rd Cir. 1987). We are convinced that petitioner suffered substantial gambling losses. Respondent does not claim that petitioner had gambling income in 1986 in addition to his January 4 winnings. Thus, respondent does not argue for application of the principle that, when it is established that petitioner had unreported gambling income, petitioner must substantiate gambling losses greater than those additional winnings before being allowed any deduction against reported winnings. Schooler v. Commissioner, 68 T.C. 867, 869 (1977). Respondent instead argues, in effect, that the Court has "no satisfactory basis for estimating the amount of petitioner's losses." Rivera v. Commissioner, T.C. Memo 1988-497. We disagree. *624 Unlike the taxpayer in Rivera, petitioner gave credible testimony and did not doctor his records. Petitioner's credible testimony and documentary evidence provide a sufficient basis for decision. See, e.g., Drews v. Commissioner, supra; Doffin v. Commissioner, supra; Forman v. Commisioner, supra; Kalisch v. Commissioner, supra; Fiaschetti v. Commissioner, T.C. Memo 1967-33. Petitioner claimed to have lost all $ 192,372 gambling during frequent trips to Nevada casinos and several thoroughbred racetracks. The net result, according to petitioner, is that he had no net gambling income in 1986, and thus owes no tax on his gambling winnings. Petitioner appeared to have backed away from that proposition by substantiating only $ 172,470.05 in cash transactions during 1986. We have concluded that at least $ 75,592 was not lost by petitioner in gambling transactions. Subtracting that amount from petitioner's gambling winnings yields $ 116,780 that could have been lost in gambling transactions. Owing to the skimpy record, we have been forced to make certain assumptions *625 in determining the allowable deduction. Petitioner's credible testimony and documentation were sufficient to show that a deduction is in order, but insufficient to show the precise amount of that deduction. Bearing heavily upon the taxpayer, we find that $ 100,000 is allowable as a deduction for gambling losses under section 165(d), leaving petitioner with net gambling income of $ 92,372 for the taxable year 1986. Negligence
Respondent determined additions to petitioner's tax for 1986, asserting that petitioner was negligent in failing to keep records adequate to substantiate his gambling losses. Section 6653(a) provides that if any part of an underpayment is caused by negligence or disregard of rules or regulations, the underpaying taxpayer is liable for an addition to tax equal to 5 percent of the underpayment and 50 percent of the interest payable on the underpayment, as computed under section 6001. A taxpayer is "negligent" when he fails to do what a reasonable, prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner has the burden of proving that respondent's additions to tax for negligence *626 were erroneous. Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Respondent has announced that "An accurate diary or similar record regularly maintained by the taxpayer, supplemented by verifiable documentation will usually be acceptable evidence for substantiation of wagering winnings and losses." Rev. Proc. 77-29, 1977-2 C.B. 538. Petitioner had no record keeping system. Petitioner submitted no evidence nor made any argument that would explain why his method of substantiation was reasonable and the determination of respondent was erroneous. We therefore uphold respondent's determination that petitioner is liable for the addition to tax under section 6653(a), as applied to the deficiency resulting from our holding on the amount of his net gambling income for 1986. Substantial Understatement
Section 6661 provides for an addition to tax if the taxpayer understates his income tax liability by the greater of 10 percent of his true tax liability or $ 5,000. We have already decided that petitioner understated his net gambling income for 1986. If the Rule 155 computation reveals that petitioner's understatement of his 1986 tax *627 liability was substantial, we will sustain the resulting addition to tax under section 6661. 1985 Late Filing
Respondent determined that petitioners are jointly liable for an addition to tax for late filing of their 1985 return. Section 6651(a)(1) provides for an addition to tax when a taxpayer fails to file a timely return, unless the failure is due to reasonable cause and not due to willful neglect. The parties stipulated that petitioners' joint return was filed on May 1, 1986, more than 2 weeks late. Petitioners claimed that they filed a request for an extension of time to file, but introduced no evidence on this point. Petitioner husband said that he provided respondent with a copy of their Form 4868, and urged the Court to verify independently that petitioners filed Form 4868 with the Fresno service center. As we told petitioner at trial, the Court's role is to hear the evidence presented at trial, not to investigate claims on its own. We also warned petitioner that we were writing on a "clean slate" and that we would disregard any prior investigation by respondent. See Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). Despite *628 these warnings, petitioner chose to rely on respondent to introduce evidence favorable to his case. While we understand that petitioner had inferior investigatory resources, we believe that it was not beyond his means to provide the court a photocopy of the extension form. Nor does the fact that during 1986 petitioner was in the grip of his gambling compulsion provide an excuse for the late filing of his 1985 return. Cf. Heber v. Commissioner, T.C. Memo 1989-85 ("vague testimony about being depressed and in a bad state of health" insufficient to overturn addition to tax for late filing); Faulkner v. Commissioner, T.C. Memo 1980-90 (illness of taxpayer's preparer insufficient to overturn addition to tax for late filing). Petitioners had the burden of proof and failed to carry it. Therefore, we uphold respondent's determination against petitioners for late filing under section 6651(a)(1) for the taxable year 1985. To reflect concessions and our findings and conclusions. Decision will be entered under Rule 155
APPENDIX Schedule I
[Cashier's checks]
Payor
I.D. Number
Amount
Date
Century Federal
068-0008357
$  60,027.80
01-07-86
Century Federal
068-0008376
40,027.80
01-08-86
Century Federal
068-0008391
20,000.00
01-10-86
Century Federal
068-0008861
2,074.45
03-14-86
Century Federal
068-0008909
10,000.00
03-20-86
Century Federal
068-0009476
3,000.00
05-31-86
$ 135,130.05
Schedule II
[Personal Checks Payable to Cash]
Payor
I.D. Number
Amount
Date
Century Federal
158
$  3,000.00
01-29-86
Century Federal
163
500.00
02-10-86
Century Federal
172
2,000.00
02-19-86
Century Federal
176
250.00
02-26-86
Century Federal
183
500.00
03-12-86
Century Federal
193
1,000.00
04-03-86
Century Federal
196
500.00
04-04-86
Century Federal
222
500.00
07-10-86
Century Federal
226
500.00
07-14-86
Century Federal
228
400.00
07-17-86
Century Federal
231
1,000.00
07-18-86
Century Federal
232
400.00
07-21-86
Century Federal
236
500.00
07-24-86
Century Federal
238
300.00
07-26-86
Century Federal
239
300.00
08-01-86
Century Federal
243
1,500.00
08-11-86
Century Federal
245
1,500.00
08-15-86
Century Federal
246
700.00
08-18-86
Century Federal
247
300.00
08-20-86
Century Federal
249
500.00
08-21-86
Century Federal
252
200.00
08-22-86
Century Federal
253
400.00
08-23-86
Century Federal
263
500.00
09-04-86
Century Federal
267
1,000.00
09-06-86
Century Federal
303
200.00
09-17-86
Century Federal
305
1,000.00
09-19-86
Century Federal
306
200.00
09-22-86
Century Federal
309
100.00
09-26-86
Century Federal
316
350.00
10-01-86
Century Federal
317
200.00
10-04-86
Century Federal
320
100.00
10-10-86
Century Federal
330
150.00
11-06-86
Century Federal
332
200.00
11-08-86
Century Federal
333
100.00
11-13-86
Century Federal
336
150.00
11-19-86
Century Federal
338
500.00
11-20-86
Century Federal
339
300.00
11-22-86
Century Federal
340
200.00
11-24-86
Century Federal
343
500.00
11-26-86
Century Federal
348
200.00
12-03-86
Century Federal
353
200.00
12-10-86
Century Federal
356
500.00
12-20-86
Century Federal
360
200.00
12-23-86
Century Federal
361
500.00
12-27-86
Century Federal
362
200.00
12-29-86
Century Federal
363
200.00
12-29-86
Century Federal
364
500.00
12-31-86
$ 25,000.00
Schedule III
[Credit Card Cash Advances]
Payor
I.D. Number
Amount
Date
Union Bank
5794304
$  1,000.00
08-04-86
Comcheck
85358691
212.50
08-17-86
Comcheck Santa Anita
305.00
02-11-86
Comcheck Golden Gate
313.00
02-25-86
Comcheck Santa Anita
312.00
03-03-86
Comcheck Santa Anita
519.00
03-04-86
Comcheck Hollywood Park
208.00
06-09-86
Comcheck Santa Anita
519.00
02-11-86
Comcheck Los Alamitos
208.00
03-20-86
Comcheck Hollywood Park
208.00
05-16-86
Comcheck Hollywood Park
207.25
05-28-86
Comcheck Hollywood Park
108.00
05-30-86
Comcheck Hollywood Park
312.50
06-06-86
Comcheck Hollywood Park
108.00
06-09-86
Comcheck Hollywood Park
208.00
06-10-86
Comcheck Hollywood
312.50
08-12-86
Comcheck Hilton Las Vegas
110.00
08-28-86
Comcheck Santa Anita
208.00
10-20-86
Comcheck Hollywood
208.00
11-12-86
Comcheck Hollywood
108.00
11-18-86
Comcheck Hollywood
208.00
08-12-86
Comcheck Hollywood Park
83.00
11-18-86
Comcheck Bay Meadows
109.00
09-03-86
Comcheck Del Mar
211.50
08-05-86
Comcheck Comdata Network
85358691
313.75
08-17-? Great American Savings
7457450
100.00
05-15-86
Great American Savings
003442
200.00
06-07-? Great American Savings
004575
200.00
06-14-? Great American Savings
017322
100.00
09-13-86
Great American Savings
003595
200.00
06-08-? Great American Savings
017116
100.00
09-11-86
Great American Savings
001905
200.00
05-28-? Great American Savings
004778
200.00
06-16-? Great American Savings
029062
200.00
05-07-86
Great American Savings
004192
100.00
06-12-? Great American Savings
001259
200.00
05-24-86
Great American Savings
002953
200.00
06-04-86
Great American Savings
029434
200.00
05-09-86
Great American Savings
029258
200.00
05-08-86
Great American Savings
029060
200.00
05-07-86
Great American Savings
016720
400.00
09-07-86
Great American Savings
016226
120.00
09-03-86
Great American Savings
004042
200.00
06-11-? Bank of Commerce
003017
100.00
08-02-86
Crocker Bank
1530941
300.00
05-08-86
First Los Angeles Bank
0102
100.00
09-06-86
First Los Angeles Bank
0081
100.00
06-21-86
First Los Angeles Bank
0061
100.00
08-02-86
First Los Angeles Bank
0062
100.00
08-02-86
First Los Angeles Bank
0012
100.00
08-07-86
First Los Angeles Bank
0013
100.00
08-07-86
Banking Center Las Vegas
8647
200.00
08-16-86
Banking Center Las Vegas
8648
100.00
08-16-86
Banking Center Las Vegas
8889
200.00
08-17-86
Banking Center Las Vegas
8875
300.00
08-17-86
Banking Center Las Vegas
1767
200.00
08-16-86
Banking Center Las Vegas
8843
200.00
10-18-86
Banking Center Las Vegas
8858
200.00
10-18-86
$ 12,340.00
*629 Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the taxable years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50% of the interest computed on $ 18,838 for the taxable year 1985 and $ 91,754 for the taxable year 1986 at the time of assessment and/or payment of tax.↩