FRED SCHOOLER AND CAROLYN J. SCHOOLER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 520–76. Filed September 7, 1977.

Fred Schooler, pro se.
*Gregory A. Robinson,* for the respondent.

SIMPSON, *Judge:* The Commissioner determined a deficiency of $5,291 in the petitioners' Federal income taxes for 1973. The sole issue remaining for decision is whether Mr. Schooler has substantiated wagering losses in excess of his unreported gains from wagering transactions.

### FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

The petitioners, Fred Schooler and Carolyn J. Schooler, were husband and wife and resided in Scottsdale, Ariz., at the time of filing their petition in this case. They filed a joint Federal income tax return for the taxable year 1973 with the Internal Revenue Service Center, Ogden, Utah. Fred Schooler will be referred to as the petitioner.

From the late fifties through 1975, the petitioner frequently patronized the racetracks, betting heavily on both dog and horse races. He was a part owner of a carpet-laying business and worked at that business when he was not at the racetracks. However, he spent many days at the tracks: Turf Paradise, near Phoenix, Ariz., operated for 90 days a year,

and Prescott Downs, not far from Phoenix, operated 26 days a year; the petitioner was at those tracks virtually every day of racing, and in addition, he often went to other tracks farther from Phoenix.

There is no evidence as to the precise amount the petitioner bet each day, but it was substantial. He considered himself poor if he began the day with as little as $200. He usually bet on every race, often as much as $200 to $500 a race. He was considered a good "handicapper," but he had the reputation of often following hunches or tips.

At least from 1969 and continuing through 1975, the petitioner frequently borrowed money, some of which was used for gambling. At the track, he frequently borrowed money from his friends to continue betting. Such loans were sometimes repaid the same day and usually within a week or a month. When he ran out of money, he often cashed personal checks. At Turf Paradise, the cashier's window advanced him money to be repaid the same day and cashed personal checks for him, but those privileges were discontinued sometime after 1973. In addition, the petitioner borrowed funds from finance companies, from his brothers, and from friends. Such loans were generally repaid, but it often took some time to do so. In 1973, the petitioner and his wife secured the following specific loans:

| Lender | Date | Amount |
|---|---|---|
| Gertrude H. Shulenberger | 2/19/73 | $800.00 |
| Dial Finance Corp | 11/5/73 | 979.82 |
| Model Finance Co | 11/8/73 | 2,020.63 |
| Arizona State Employees' Credit Union | 11/13/73 | 2,851.55 |
| Total | | 6,652.00 |

The petitioner maintained no records of his racetrack winnings or losses for 1973 and reported no gains or losses from wagering on his income tax return for that year. The Commissioner determined, based upon U.S. information returns (Forms 1099) filed by various racetracks, that the petitioner had income from wagering of $14,773 in 1973, and the petitioner did not dispute receiving such income. In addition, he won bets on many races which were not reported on such forms.

In 1973, the petitioner lived in a three-bedroom house situated on an acre of land in Paradise Valley. The purchase price of the house in 1970 was $29,000. In 1973, the petitioner had four thoroughbred racing horses; to accommodate them, there was a substantial corral with a fence around it and at least two horse pens. In addition, the petitioner installed a swimming pool at a cost of approximately $5,000; the pool was financed with a bank loan which was repaid over a period of 5 years. In 1973, the petitioner's wife also worked; on their joint Federal income tax return, they reported taxable income of $17,916.

In his notice of deficiency, the Commissioner determined that the petitioners received additional income in the amount of the winnings reported on the Forms 1099. He did not find any additional wagering income, nor did he allow any deductions for wagering losses.

OPINION

Section 165(d) of the Internal Revenue Code of 1954 permits the deduction of "Losses from wagering transactions * * * only to the extent of the gains from such transactions." The petitioner has the burden of proving that his alleged losses were in fact sustained; the issue is a factual one, to be decided on the basis of all the evidence. *Fogel v. Commissioner*, 237 F.2d 917 (6th Cir. 1956), affg. per curiam a Memorandum Opinion of this Court; *Green v. Commissioner*, 66 T.C. 538, 544 (1976).

The petitioner admits receiving the gambling winnings reported on the Forms 1099 and other winnings not so reported; nevertheless, he claims that the fact that he and his wife lived modestly but had to borrow substantial money in 1973 shows that his losses for the year exceeded his total winnings for the year. Since there were unreported winnings, the petitioner must establish that his losses exceeded the unreported winnings in order to be entitled to deduct any such losses. *Donovan v. Commissioner*, 359 F.2d 64 (1st Cir. 1966), affg. per curiam a Memorandum Opinion of this Court.

We cannot accept the petitioner's conclusion. The evidence shows that the petitioner wagered substantial amounts; he was a big loser at times, but he also was a big winner at other times. The evidence contains no indication as to the amount

actually won, or lost, in 1973. The petitioner produced personal checks in the amount of $6,050 which he cashed at the tracks to obtain funds for betting, but we do not know whether those funds were lost, or whether they resulted in winnings.

Nor can we conclude from the petitioner's borrowings in 1973 that he lost money in that year. The evidence shows that he had a history of borrowing money: he borrowed in years before 1973, and he continued to borrow in the years after 1973; and the record does not indicate whether his borrowings in the other years were more or less than the amounts borrowed in 1973. In other words, we do not know whether he was any worse off in 1973 than in other years. Furthermore, the fact that the finance companies and his friends were willing to continue to loan him money in 1973 and in later years suggests that they did not consider him a poor risk. In addition, we do not know what loans were outstanding against him at the beginning of 1973 and whether the loans secured in that year may have been for the purpose of repaying earlier loans. Finally, the fact that his check-cashing privilege was canceled sometime after 1973 tends to indicate that his financial difficulties did not reach their peak until sometime after 1973. In short, the borrowing of money in that year is simply insufficient evidence to indicate that his losses for the year exceeded his winnings.

The absence of a lavish lifestyle is also insufficient to carry the petitioner's burden of proof. Although there was no evidence of unusual or extravagant expenditures, there was every indication that the petitioner and his wife lived comfortably during 1973. In fact, we have some doubts that the petitioner could have sustained such a comfortable standard of living if his gambling losses had been as dramatic as he alleged.

The petitioner complains that if we do not accept his evidence as establishing his losses, it is impossible for a taxpayer to prove wagering losses. We appreciate that many taxpayers do not keep a detailed record of their wagering winnings and losses. Yet, section 1.6001-1(a), Income Tax Regs., imposes on all taxpayers the duty of maintaining "permanent books of account or records * * * as are sufficient to establish the amount of gross income, deductions, credits,

or other matters required to be shown by such person in any return of such tax or information." In addition, there are many specific recordkeeping requirements; for example, section 274(d) and the regulations thereunder set forth the specific records which must be kept to substantiate a deduction for business travel and entertainment. There is no indication that the petitioner or other taxpayers engaged in wagering transactions could not maintain comparable records, such as a daily diary setting forth all the wagering transactions. Deductions for other purposes are not allowable unless substantiated by adequate records. E.g., sec. 1.170–1(a)(3)(iii), Income Tax Regs. (charitable contributions); sec. 1.213–1(h), Income Tax Regs. (medical expenses); *Roberts v. Commissioner*, 62 T.C. 834 (1974) (casualty loss and medical expense deduction); *Kasey v. Commissioner*, 54 T.C. 1642 (1970), affd. per curiam 457 F.2d 369 (9th Cir. 1972) (travel expenses and moving expenses); *Sanford v. Commissioner*, 50 T.C. 823 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969), cert. denied 396 U.S. 841 (1969) (travel and entertainment expenses). It is clear that for such purposes, the kind of general evidence presented by the petitioner in this case is not sufficient. There is surely no reason to treat taxpayers such as the petitioner who claim to have sustained wagering losses more favorably than other taxpayers, by allowing a deduction for wagering losses when the evidence is vague and inadequate. We recognize that this Court has applied the rule of *Cohan v. Commissioner*, 39 F.2d 540, 543–544 (2d Cir. 1930), and permitted deductions based on estimates where it was convinced that net losses were in fact sustained; however, the record in the case before us provides no satisfactory basis for estimating the amount of the petitioner's winnings or losses, nor does it convince us that in fact his losses exceeded his unreported gains. Accordingly, we must conclude and hold that he has failed to carry his burden of proof in this case and that he is taxable on the gambling winnings determined by the Commissioner. Compare *Donovan v. Commissioner, supra,* and *Stein v. Commissioner*, 322 F.2d 78 (5th Cir. 1963), affg. a

Memorandum Opinion of this Court, with *Drews v. Commissioner,* 25 T.C. 1354 (1956).

*Decision will be entered under Rule 155.*