DAVID A. DeMONACO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
De Monaco v. Commissioner
Docket No. 13308-79.
United States Tax Court
T.C. Memo 1981-17; 1981 Tax Ct. Memo LEXIS 727; 41 T.C.M. (CCH) 718; T.C.M. (RIA) 81017; January 21, 1981
David A. DeMonaco, pro se. Russell F. Kurdys and Frank A. Falvo, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency of $ 6,122 in petitioner's Federal income tax for 1976. The only issue presented for decision is whether the petitioner is entitled to a wagering loss deduction under section 165(d) [1] for 1976 in excess of the $ 23,000 allowed by respondent. *728 FINDINGS OF FACT Some of the facts have been established by respondent's request for admissions filed on July 1, 1980. David A. DeMonaco (petitioner) was a legal resident of New Castle, Pennsylvania, when he filed his petition in this case. Petitioner filed his Federal income tax return for the year 1976 with the Internal Revenue Service Center, Philadelphia, Pennsylvania, on which he reported the amount of $ 47,339 as "gambling winnings from horse race wagering--Waterford Park, Chester, W. Va." He claimed a deduction of $ 46,000 on Schedule A, line 32, of the return as "gambling losses from horse race wagering." No other source of income was reported on the petitioner's return. During 1976 the petitioner spent much of his time at the racetrack primarily at Waterford Park, Chester, West Virginia. The racetrack is located many miles from the home of petitioner's mother in New Castle, Pennsylvania, where he resided. Petitioner was engaged in wagering activity almost daily. He was at the racetrack frequently. Most of the betting tickets he purchased were for daily double, perfecta or trifecta races. But he also purchased a substantial number of tickets for straight win, *729 place and show bets. The $ 47,339 reported by petitioner as gambling income represents the sum of 29 Federal Information Returns (Forms 1099) signed by him at Waterford Park Racetrack during the year 1976. The racing association is required to report wagering income in excess of $ 600 on a Form 1099. No gambling winnings other than those reported on Forms 1099 were reported by petitioner on his 1976 Federal income tax return, although he frequently received other unreported winnings which were not required to be reported on the Federal Information Returns. Petitioner maintained no books or records of his gambling income other than the Forms 1099, and he was unable to estimate the amount of unreported winnings that he received during 1976. The dates and amounts of the Form 1099 winnings were as follows: Date
Winnings
January 2, 1976
$ 1,679.80
April 12, 1976
1,110.00
May 15, 1976
1,088.40
May 19, 1976
1,131.20
July 28, 1976
665.20
August 14, 1976
986.20
August 14, 1976
938.20
August 19, 1976
1,351.20
October 4, 1976
715.40
October 14, 1976
685.80
October 19, 1976
787.40
October 26, 1976
1,192.60
October 30, 1976
1,376.20
November 3, 1976
622.40
November 6, 1976
4,441.60
November 6, 1976
1,462.00
November 11, 1976
2,765.00
November 13, 1976
726.00
November 13, 1976
2,616.00
November 16, 1976
1,136.60
November 18, 1976
2,306.40
November 19, 1976
5,693.60
November 19, 1976
1,323.60
December 4, 1976
2,419.80
December 4, 1976
3,088.00
December 7, 1976
617.60
December 8, 1976
2,131.20
December 22, 1976
1,458.00
December 28, 1976
823.20
Total
$ 47,338.60
*730 Petitioner's only record of wagering losses for the year 1976 consisted of approximately $ 55,605 in losing tickets from Waterford Park Racetrack. He submitted these tickets to the respondent during the course of the audit of his return for 1976. He claimed he had additional losing tickets but they were not submitted to respondent or to the Court. There is no corroborating evidence to show that all of the wagering tickets represent losses actually incurred by the petitioner. Some of the losing tickets are in sequence; others are not. Petitioner was unemployed during 1976. He owned no real property. He had no checking or savings accounts in that year. He borrowed about $ 6,000 from his friends and family. He was divorced and made support payments of $ 600 to his former wife. In his notice of deficiency dated June 11, 1979, respondent allowed gambling losses of $ 23,000 and disallowed the remainder claimed. OPINION We must decide if the petitioner is entitled to deduct gambling losses he sustained in 1976 in excess of the amount allowed by respondent. Section 165(d) provides that "losses from wagering transactions shall be allowed only to the extent of the gains *731 from such transactions." Petitioner, who challenges the respondent's disallowance of $ 23,000 of the claimed gambling losses, has the burden of proving that he sustained such additional losses. Stein v. Commissioner,322 F.2d 78 (5th Cir. 1963), affg. T.C. Memo. 1962-19, Mack v. Commissioner,429 F.2d 182 (6th Cir. 1970), affg. T.C. Memo. 1969-26; Schooler v. Commissioner,68 T.C. 867 (1977). Petitioner had a duty to maintain adequate records to substantiate his gambling winnings and losses. Section 1.6001-1(a), Income Tax Regs. We conclude on this record that the petitioner has failed to carry his burden of proof with respect to the substantiation of his total gambling winnings and losses in 1976. Petitioner introduced into evidence a box full of uncashed racing tickets in the amount of $ 55,605 which he contends represented his total gambling losses in 1976. On the basis of these tickets respondent compiled schedules reflecting the following information: the date of betting, race number, type of bet, amount of bet, number of tickets purchased, the total bet and the window number. These schedules, *732 which appear to be reliable, reveal a pattern of alleged betting activities that cast serious doubt on petitioner's credibility. First, there are instances where the petitioner would have placed identical bets for the same race at windows located in different areas of Waterford Park Racetrack. It is beyond our comprehension why anyone would place identical bets on the same race at several different windows, some of which were located in widely separated areas of the track.Second, many of the losing tickets in petitioner's possession were purchased at window "A" located in the Cap and Whip Club at Waterford Park. The Cap and Whip Club is closed to the public, and the petitioner testified that he was not a member of the club during 1976. Third, there are instances where the petitioner's tickets are non-sequential, indicating that he would have gone to one window several times to place the same bet on the same race. The weakest link in the petitioner's case is that he admitted he had additional winnings which were not required to be reported on Forms 1099 and which he did not report on his 1976 Federal income tax return. According to petitioner's own testimony, some of these unreported *733 winnings were obviously substantial. See Schooler v. Commissioner,68 T.C. at 871; Donovan v. Commissioner,359 F.2d 64 (1st Cir. 1966); Glazer v. Commissioner,T.C. Memo. 1980-337. The rule of Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), is inapplicable to this case. The Cohan rule, when applicable, permits a deduction based on estimates where the Court is convinced, from the record, that the losses have in fact been incurred. As stated in Williams v. United States,245 F.2d 559, 560 (5th Cir. 1957), Cohan requires that "there be sufficient evidence to satisfy the trier that atleast the amount allowed in the estimate was in fact spent or incurred for the stated purpose. Until the trier has that assurance from the record, relief to the taxpayer would be unguided largesse." Here the petitioner has provided no reasonable basis upon which an estimate of his winnings and losses can be made.Petitioner, being unable to estimate his unreported winnings and offering no satisfactory evidence to establish such winnings, has failed to lay a proper foundation for the application of *734 the Cohan rule. Consequently, that portion of the claimed loss in excess of the amount allowed by the respondent must be disallowed. Accordingly, we sustain respondent's determination. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise indicated.↩