FRANK M. DELGOZZO and SANDRA DELGOZZO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Del Gozzo v. Commissioner
Docket No. 2887-82.
United States Tax Court
T.C. Memo 1983-613; 1983 Tax Ct. Memo LEXIS 171; 46 T.C.M. (CCH) 1590; T.C.M. (RIA) 83613; September 28, 1983. Frank M. DelGozzo and Sandra DelGozzo, pro se. Lynn S. Casimir, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies in and additions to petitioners' income taxes as follows: Year
Deficiency in
Additions to Tax
Ended
Income Tax
Sec. 6653(a) [1]
1976
$22,190.12
$1,109.51
1977
4,306.00
215.30
1978
1,652.00
82.60
1979
189.00
9.45
*172 The questions for decision are (1) how much of petitioners' claimed gambling losses are allowable for each of the tax years in issue, and (2) whether the additions to tax for negligence or intentional disregard of rules and regulations were properly imposed. Some of the facts have been stipulated, and the stipulation of facts and exhibits thereto are incorporated herein by reference. FINDINGS OF FACT Petitioners are husband and wife and resided in Cherry Hill, New Jersey, at the time they filed their petition herein. They timely filed joint income tax returns for the years 1976, 1977, 1978, and 1979 using the cash receipts and disbursements method of accounting. During those years, Frank M. DelGozzo (petitioner) was employed as a pari-mutual cashier at various racetracks in New Jersey. Petitioner reported no income from gambling on the tax returns filed for the years 1976, 1977, and 1979. For the taxable year 1978, petitioner reported income from gambling of $5,475 and claimed gambling losses of $5,475. In his notice of deficiency, respondent determined that petitioner had gambling income and allowable corresponding losses in the following amounts: Gambling
Gambling
Year
Income
Losses
1976
$59,931.90
$13,154
1977
13,206.20
1,463
1978
* 8,220.80
535
1979
618.80
-
*173 Petitioner admits that he had unreported gross income from wagering, but contends that he sustained losses in excess of the winnings determined by respondent. Petitioner did not maintain a contemporaneous log book of his daily winnings and losses, and he concedes that he had winnings for which there is no record.Petitioner did, however, submit numerous losing tickets, many of which were sequentially numbered, in amounts that exceed the total winnings determined by respondent and admitted by petitioner. Respondent calculated allowable losses by considering only the losing tickets presented for the days on which winnings were identified and disregarding losses reflected in tickets purchased on other dates. In this manner, respondent determined that petitioner received net gambling income that is substantial both in dollar amount and in relation to petitioner's other income, as illustrated by the following table: Reported
Net Gambling
Year
Total Income
Income
% Increase
1976
$19,155
$46,777.90
244
1977
16,864
11,743.20
70
1978
* 21,866
7,685.80
35
1979
14,581
618.80
4
*174 During an examination of petitioner's tax returns for the years in issue, respondent analyzed petitioner's bank accounts and observed petitioner's lifestyle. Respondent did not find any evidence of an increased net worth but declined to treat that information as evidence that gambling losses exceeded gambling gains, citing Schooler v. Commissioner,68 T.C. 867, 870 (1977). Although petitioner retained the losing tickets and racetrack programs he received while gambling, he made no attempt to organize or tally the losing tickets for the years in issue until the examination of his tax returns for those years was in progress. His failure to report gambling income during those years was based upon his firm conviction that his losses exceeded his winnings, although he was unable to verify his conviction by referring to any records. OPINION Section 165(d) permits the deduction of "Losses from wagering transactions * * * [but] only to the extent of the gains from such transactions." Petitioner has the burden of proving that his alleged losses were in fact sustained. The issue is a factual one, to be decided on the basis of all of the evidence. Fogel v. Commissioner,237 F.2d 917 (6th Cir. 1956), *175 affg. per curiam a Memorandum Opinion of this Court; Green v. Commissioner,66 T.C. 538, 544 (1976). Where, as here, petitioner admits receiving unreported winnings, he must present objective evidence to support his testimony that his losses exceed those determined by respondent. Donovan v. Commissioner,359 F.2d 64 (1st Cir. 1966), affg. per curiam a Memorandum Opinion of this Court; Schooler v. Commissioner,supra.If petitioner's evidence corroborates his testimony that he incurred losses, we may apply the rule laid down in Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), to permit deductions by estimating those losses using our best judgment on the record. Drews v. Commissioner,25 T.C. 1354 (1956). [2] There is, however, no ironclad formula for determining what records should be deemed sufficient to prove losses under section 165(d). Green v. Commissioner,supra at 548. *176 Petitioner testified that he believed that he had gambling losses in excess of those allowed for the years in issue. He also called several witnesses who corroborated his testimony by describing their observation of his gambling activities. Petitioner and the other witnesses were candid and credible, but we cannot merely accept their conclusions. That testimony, supplemented by other evidence in the record, however, convinces us that petitioner did suffer losses greater than those allowed by respondent. Petitioner submitted losing tickets having a total cost of $131,986 for 1976; $59,533 for 1977; and $15,751 for 1978.Respondent accepted only those tickets bearing the same date as petitioner's identified winnings and does not concede that any of the other tickets were purchased by petitioner. Many of petitioner's tickets were sequentially numbered, thus reinforcing petitioner's claim that he purchased them. [3] We find it unlikely under the facts herein that petitioner only lost money on days that he won, see Green v. Commissioner,supra at 547, and think respondent's methodology of accepting losing tickets only on days on which there were winnings is unreasonable. *177 [4] Another analysis presented by respondent, however, shows that petitioner's available cash, including identified winnings, was insufficient to enable petitioner to purchase all of the losing tickets offered by him. In light of this evidence and petitioner's admission that he had other winnings, we cannot find that all of the losses now claimed may be offset against those winnings that have now been identified. To do so would possibly permit double deduction of the same items of loss. We believe that petitioner has adequately shown that his winnings not offset by losses could not have been as great as the amount determined by respondent. That is, we do not believe that petitioner's taxable income could have increased by 244 percent in 1976 or 70 percent in 1977 without some visible change in petitioner's net worth. In view of the legal *178 requirement that significant winnings be reported by payors, we do not believe that any additional unreported winnings by petitioner could have been so substantial as to offset all of the losses claimed. Finally, we believe that the amount of the deficiency determined by respondent is excessive because it recognizes only approximately 10 percent of the value of the losing tickets presented in 1976 and less than 2.5 percent of the value of the losing tickets presented for 1977. Although he has made general reference in his trial memorandum to the credibility of petitioner's evidence, respondent has not controverted the evidence supporting the additional losses put forth by petitioner. Our duty, then, is to make as close an approximation of the losses as we can, bearing heavily upon the taxpayer whose inexactitude is of his own making. "But to allow nothing at all appears to us inconsistent with saying that something was spent." Cohan v. Commissioner,supra at 544. We therefore find that petitioner is entitled to deduct additional losses in the amount of $36,000 in 1976 and $3,000 for 1977 against the gains determined by respondent. As to 1978 and 1979, however, *179 we think the evidence produced by petitioners was not sufficient to meet their burden of proof. It is clear from the discussion above that petitioner failed to maintain complete records of his winnings and losses, and that such failure was due to negligence or an intentional disregard of rules and regulations and justifies imposition of the additions to tax under section 6653(a). See section 1.6001-1(a), Income Tax Regs.; Schroeder v. Commissioner,40 T.C. 30, 34 (1963). The additions to tax are therefore sustained, after adjustment to reflect our findings herein. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue.↩
*. Petitioner reported $5,475 of this amount.↩
*. Including $5,475 racetrack winnings (losses in same amount deducted on Schedule A)↩
2. See also Dunnock v. Commissioner,T.C. Memo. 1980-449; Rockin v. Commissioner,T.C. Memo. 1980-448; Wolkomir v. Commissioner,T.C. Memo. 1980-344; Kovacs v. Commissioner,T.C. Memo. 1967-214; Greenfeld v. Commissioner,T.C. Memo. 1966-83; Bickers v. Commissioner,T.C. Memo. 1960-83↩.
3. Compare Taormina v. Commissioner,T.C. Memo. 1976-94 (majority of tickets in sequence; a portion of the claimed losses allowed), to Saitta v. Commissioner,T.C. Memo. 1975-171↩ (nonconsecutive tickets; claimed losses not allowed). 4. See Reyer v. Commissioner,T.C. Memo. 1962-240↩.