T.C. Memo. 1998-212

UNITED STATES TAX COURT

JOHN D. SMITH AND HAZEL B. SMITH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26101-96.                    Filed June 16, 1998.

<u>Daniel J. Winfree</u>, for petitioners.

<u>Timothy F. Salel</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CARLUZZO, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.  Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for the year 1994.  Rule
references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioners' 1994
Federal income tax in the amount of $2,783.  The issues for

decision are: (1) Whether petitioners are entitled to a gambling loss deduction not claimed on their 1994 Federal income tax return; and (2) whether petitioners may exclude from their 1994 income certain amounts received during that year pursuant to long-term disability insurance coverage.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioners are husband and wife. They filed a timely joint Federal income tax return for the year 1994. At the time the petition was filed, petitioners resided in El Cajon, California.

Prior to the year in issue, Hazel B. Smith was employed by Sears, Roebuck and Co. (Sears). She retired from Sears either shortly before, or early in, 1994. As a result of an accident that occurred prior to 1994, she was confined to a wheelchair for most, or all, of that year.

John D. Smith was employed as a counter person by Consolidated Electrical Distributors, Inc. (Consolidated) from 1987 until he injured his back in an employment-related accident in 1992. Consolidated provided long-term disability benefits to its employees through a group plan underwritten by ITT Hartford (Hartford). As a result of his back injury, he applied for and received long-term disability benefits under the group plan. Long-term disability benefits were approved in September 1993 to continue during the period of his disability, but not beyond

December 1994. The benefits took the form of monthly payments, the amounts of which took into account his wages at the time of the accident, worker's compensation payments and other disability benefits received. During 1994 he received monthly payments (long-term disability benefits) from Hartford totaling $3,637. The monthly payments were made by check; the check stubs indicate that the "taxable pct" of each payment is "100". The payments were reported as wages on a Form W-2 issued to him by Consolidated for the year 1994.

Neither petitioner was employed during 1994. Because they had so much free time and their activities were somewhat limited by their respective disabilities, they developed an interest in playing bingo. Many of their friends also played bingo and petitioners viewed the experience as a social activity as much as a gambling activity.

During 1994 petitioners attended numerous bingo sessions conducted at two Indian reservations located within 20 miles of their residence. Typically, they would attend one or two bingo sessions per day, 4 to 5 days per week. Mrs. Smith spent between $27 and $32 per session on various types of games that were played during the bingo sessions. Mr. Smith spent somewhat less. Sometimes they won, sometimes they lost, and sometimes they broke even. Petitioners did not consider breaking even to equate to winning. Petitioners did not maintain any records that reflect

the amounts spent or won playing bingo during 1994. They saved some admission receipts and cards, but these documents were discarded prior to the time that they were notified that their 1994 year was under examination.

During a 6- or 7-week period in 1994 Mrs. Smith was particularly lucky. She enjoyed $12,600 in bingo winnings, which were reported to her and respondent on Forms W-2G.

Petitioners included $5,950 in bingo winnings in the income reported on their 1994 Federal income tax return. The manner in which that amount was calculated was not explained on the return. They did not include any portion of the disability benefits received by Mr. Smith in their reported income.

In the notice of deficiency respondent increased petitioners' income by the excess of the amount of bingo winnings reported on the Forms W-2G over the amount reported on their return. Respondent also increased petitioners' income by the amount of disability benefits received by Mr. Smith. Other adjustments were made in the notice of deficiency but are not in dispute in this case.

OPINION

Bingo Winnings and Losses

Although raised in the context of unreported gambling income, in essence the controversy between the parties focuses upon the allowance of a gambling loss deduction. In general,

section 165(d) allows a taxpayer to deduct losses from gambling transactions only to the extent of gains from such transactions.

Petitioners agree that all of their bingo winnings should have been reported, but claim entitlement to a gambling loss deduction not listed on their 1994 return. At trial petitioners explained that the amount of bingo winnings reported on their 1994 return was a net amount. Mrs. Smith estimated that she spent more than $100 per week to play bingo during 1994. She calculated her total bingo losses to be $6,900 for that year. She computed her winnings to include the $12,600 reported on Forms W-2G, plus $250 in other winnings received in $50 or $100 increments. The amount of bingo winnings reported on petitioners' 1994 return was calculated by subtracting estimated losses from estimated winnings.

Respondent argues that petitioners are not entitled to any deduction for gambling losses because they failed to maintain adequate books and records from which the extent of their bingo winnings and losses during 1994 can be established.

Section 6001 and the corresponding regulations require taxpayers to keep adequate records to substantiate their income and deductions. See also Rev. Proc. 77-29, 1977-2 C.B. 538. When a taxpayer fails to keep records, but a court is convinced that deductible expenditures were incurred, the court "should make as close an approximation as it can, bearing heavily if it

chooses upon the taxpayer whose inexactitude is of his own making."  Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930). In cases involving gambling loss deductions, this Court has invoked the rule of Cohan only when satisfied that the taxpayer incurred some gambling losses, see Drews v. Commissioner, 25 T.C. 1354 (1956); Doffin v. Commissioner, T.C. Memo. 1991-114; Forman v. Commissioner, T.C. Memo. 1988-64; Kalisch v. Commissioner, T.C. Memo. 1986-541, affd. without published opinion 838 F.2d 461 (3d Cir. 1987), and there is some basis upon which an estimate of such losses can be made.  Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).  However, before we allow a gambling loss deduction based upon estimates, we must be convinced that the taxpayer's gambling losses exceeded unreported gains from gambling transactions.  Donovan v. Commissioner, 359 F.2d 64 (1st Cir. 1966), affg. per curiam T.C. Memo. 1965-247; Schooler v. Commissioner, 68 T.C. 867 (1977); Scoccimarro v. Commissioner, T.C. Memo. 1979-455.

Obviously, petitioners sustained gambling losses during 1994; equally as obvious, however, is the fact that they enjoyed unreported bingo winnings.  In this case, because petitioners received unreported bingo winnings, they must establish that their annual bingo losses exceeded their annual unreported bingo winnings in order to be entitled to a deduction for bingo losses.

Because petitioners did not consider small amounts won to be consequential, and they did not consider breaking even to equate to winning, we have no basis to calculate, or estimate, petitioners' unreported bingo winnings. Without some basis for estimating petitioners' 1994 unreported bingo winnings it is impossible to determine whether petitioners' bingo losses exceeded those winnings. Accordingly, they are not entitled to any deduction for bingo losses. It follows, and we hold, that respondent's adjustment increasing their 1994 income by the excess of the bingo winnings reported on Forms W-2G over reported gambling winnings is sustained.

Long-Term Disability Benefits

Petitioners did not report any portion of the long-term disability benefits Mr. Smith received from Hartford in 1994. The parties appear to agree that the group plan subscribed to by Consolidated constitutes an accident or health plan within the meaning of sections 104(a)(3) and 105(a), and we proceed as though it does. Simply stated, the statutory scheme framed by these sections allows a taxpayer to exclude from income amounts received through accident or health insurance plans if: (1) The taxpayer paid for the insurance; or (2) the amounts were attributable to contributions by the taxpayer's employer that were includable in the taxpayer's gross income. Sec. 104(a)(3). On the other hand, amounts received by an employee through

accident or health insurance for personal injuries must be included in gross income to the extent such amounts are attributable to contributions by the employer that were not includable in the gross income of the employee.  Sec. 105(a).

In this case there is nothing in the record that suggests that the amounts contributed by Consolidated on behalf of Mr. Smith for the long-term disability insurance that generated the payments here under consideration were includable in his gross income.  Although he testified that he believed that he might have contributed a de minimis amount towards the insurance, we do not find his testimony on the point to be sufficient to support a finding that he did so.  Consequently, we find that section 105(a) rather than 104(a)(3) controls.  It follows that petitioners must include in their 1994 income the amount of long-term disability payments received by Mr. Smith during that year, and respondent's determination in this regard is sustained.

To reflect the foregoing and the agreed adjustments,

<u>Decision will be entered</u>

<u>under Rule 155</u>.