T.C. Memo. 2006-205

UNITED STATES TAX COURT

TERRI L. AND AUSTIN W. HARTSOCK, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8950-05.                    Filed September 25, 2006.

<u>Stuart Levine</u>, for petitioners.[1]

<u>Karen Lynne Baker</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined deficiencies in, and
accuracy-related penalties under section 6662(a)[2] on, petition-

---

[1]Petitioners filed their petition with the Court and ap-
peared at trial pro sese.  On Feb. 14, 2006, after the trial in
this case, Stuart Levine entered his appearance.

[2]All section references are to the Internal Revenue Code
(continued...)

ers' Federal income tax (tax), as follows:

| Year | Deficiency | Accuracy-Related Penalty |
|------|-----------|--------------------------|
| 1999 | $87,099 | $17,420 |
| 2000 | 104,225 | 20,845 |

The issues remaining for decision are:

(1) Are petitioners entitled for each of the years at issue to deduct gambling losses in excess of the deduction allowed by respondent for each such year?  We hold that they are not.

(2) Are petitioners liable for each of the years at issue for the accuracy-related penalty under section 6662(a)?  We hold that they are.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioners, Terri L. Hartsock (Ms. Hartsock) and Austin W. Hartsock (Mr. Hartsock), resided in Frederick, Maryland, at the time they filed the petition.

Around 1994, Mr. Hartsock incorporated his business known as The Frederick Painting Company.  Since that time, he and Ms. Hartsock have been employed by that company.

During the years at issue, petitioners did not have a mortgage loan with respect to their residence and therefore did not have any mortgage loan expenses.  Nor did petitioners have

---

[2](...continued)
(Code) in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

very many other expenses during those years.

During 1999 and 2000, petitioners made a number of trips to Atlantic City, New Jersey (Atlantic City), where they, inter alia, gambled at slot machines at various gambling establishments, including Tropicana, Trump Taj Mahal, Resorts Atlantic City, and Harrah's.[3]  During 1999 and 2000, petitioners did not maintain the records required by the Code to substantiate any gambling losses that they incurred during each of those years.

For 1999, Harrah's issued to Mr. Hartsock at least three substitute forms in lieu of Forms W-2G, Certain Gambling Winnings (Harrah's substitute 1999 Form W-2G),[4] with respect to the following respective dates:  August 13 and 14 and September 4, 1999.

Harrah's substitute 1999 Form W-2G issued to Mr. Hartsock with respect to August 13, 1999, showed, inter alia, the following gross winnings of Mr. Hartsock from each of several slot machines that he played at Harrah's, the time of such gross winnings from each such machine, and the minimum amount required to be wagered in each such machine:

---

[3]During 1999, Ms. Hartsock traveled with her parents, and without Mr. Hartsock, to Atlantic City, where she gambled at at least one gambling establishment.

[4]The instructions for Form W-2G, Certain Gambling Winnings, with respect to 1999 stated in pertinent part:  "If the [gambling] winnings (not reduced by the wager) from a * * * **slot machine** are $1,200 or more, they are reportable gambling winnings."

| Gross Winnings | Time of Gross Winning | Minimum Amount Required To Be Wagered |
|---|---|---|
| $5,000 | 9:20 p.m. | $25 |
| 750 | 9:30 p.m. | 25 |
| 5,000 | 10:30 p.m. | 25 |
| 1,750 | 9:40 p.m. | 25 |
| 3,000 | 12:00 a.m. | 100 |
| $15,500 | | |

Harrah's substitute 1999 Form W-2G issued to Mr. Hartsock with respect to August 14, 1999, showed, inter alia, the following gross winnings of Mr. Hartsock from each of several slot machines that he played at Harrah's, the time of such gross winnings from each such machine, and the minimum amount required to be wagered in each such machine:

| Gross Winnings | Time of Gross Winnings | Minimum Amount Required To Be Wagered |
|---|---|---|
| $3,000 | 10:22 p.m. | $100 |
| 5,100 | 10:51 p.m. | 25 |
| 2,000 | 10:55 p.m. | 100 |
| 2,000 | 11:15 p.m. | 100 |
| 2,000 | 12:20 a.m. | 100 |
| 18,000 | 12:30 a.m. | 100 |
| 2,000 | 12:50 a.m. | 100 |
| 1,500 | 1:15 a.m. | 100 |
| $35,600 | | |

Harrah's substitute 1999 Form W-2G issued to Mr. Hartsock with respect to September 4, 1999, showed, inter alia, the following gross winnings of Mr. Hartsock from each of several slot machines that he played at Harrah's, the time of such gross winnings from each such machine, and the minimum amount required to be wagered in each such machine:

| Gross Winnings | Time of Gross Winnings | Minimum Amount Required To Be Wagered |
|---|---|---|
| $5,100 | 10:07 p.m. | $25 |
| 2,875 | 11:30 p.m. | 25 |
| 1,200 | 12:22 a.m. | 25 |
| 4,000 | 12:55 a.m. | 100 |
| 10,000 | 12:56 a.m. | 100 |
| 10,000 | 1:25 a.m. | 100 |
| 2,000 | 2:00 a.m. | 100 |
| 4,000 | 2:45 a.m. | 100 |
| 2,000 | 3:00 a.m. | 100 |
| 2,000 | 3:20 a.m. | 100 |
| 8,000 | 3:40 a.m. | 100 |
| $51,175 | | |

On August 13, 1999, in exchange for cash, Mr. Hartsock issued three checks totaling $13,000 payable to Marina Associates, a company that handled the casino credit for Harrah's. On August 14, 1999, in exchange for cash, Mr. Hartsock issued three checks totaling $12,000 payable to Marina Associates and one $5,100 check payable to T.T.M.A., a company that handled the casino credit for Trump Taj Mahal. (We shall sometimes refer collectively to the respective checks that Mr. Hartsock issued to Marina Associates on August 13 and 14, 1999, and to T.T.M.A. on August 14, 1999, as Mr. Hartsock's checks.) Shortly after Mr. Hartsock issued Mr. Hartsock's checks to Marina Associates and T.T.M.A., those organizations presented such checks to Mr. Hartsock's bank, Frederick County National Bank, for payment from funds in his bank account.

Petitioners timely filed Form 1040, U.S. Individual Income Tax Return, for each of their taxable years 1999 and 2000 (petitioners' 1999 return and petitioners' 2000 return, respectively).

In petitioners' 1999 return, petitioners reported the following income:

| Income | Amount |
|---|---|
| Wages, salaries, tips, etc. | [1]$92,461 |
| Taxable interest | 2,333 |
| Ordinary dividends | 701 |
| Capital gain or (loss) | 76,940 |
| Rental real estate, royalties, partnerships, S corporations, trusts, etc. | 9,463 |
| Other income | [2]230,825 |
| Total income | $412,723 |

[1]Of the $92,461 of total wages reported in petitioners' 1999 return, The Frederick Painting Company paid $74,911.40 to Mr. Hartsock and $17,550 to Ms. Hartsock.
[2]The parties agree that the $230,825 of "Other income" reported in petitioners' 1999 return consisted solely of petitioners' gambling winnings.

In petitioners' 1999 return, petitioners claimed itemized deductions totaling $245,250. Included in those itemized deductions was a deduction for $230,825 of claimed gambling losses.

In petitioners' 2000 return, petitioners reported the following income:

| Income | Amount |
|---|---|
| Wages, salaries, tips, etc. | [1]$93,582 |
| Taxable interest | 152 |
| Ordinary dividends | 30 |
| Capital gain or (loss) | [2](3,000) |
| Rental real estate, royalties, partnerships, S corporations, trusts, etc. | 9,736 |
| Other income | [3]293,750 |
| Total income | $394,250 |

[1]Of the $93,582 of total wages reported in petitioners' 2000 return, The Frederick Painting Company paid $75,381.54 to Mr. Hartsock and $18,200 to Ms. Hartsock.

[2]In Schedule D, Capital Gains and Losses, petitioners reported a net short-term capital loss of $283,646 and a net long-term capital gain of $11.

[3]The parties agree that the $293,750 of "Other income" reported in petitioners' 2000 return consisted solely of petitioners' gambling winnings.

In petitioners' 2000 return, petitioners claimed itemized deductions totaling $309,580. Included in those itemized deductions was a deduction for $293,022 of claimed gambling losses.

Respondent issued to petitioners a notice of deficiency (notice) for their taxable years 1999 and 2000. In that notice, respondent disallowed the gambling loss deductions of $230,825 and $293,022 that petitioners claimed in petitioners' 1999 return and petitioners' 2000 return, respectively. In the notice, respondent also determined that petitioners are liable for each of their taxable years 1999 and 2000 for the accuracy-related penalty under section 6662(a) because of section 6662(b)(1).

OPINION

Claimed Gambling Losses

At trial, respondent conceded that petitioners incurred gambling losses of $76,314 and $55,750 during 1999 and 2000, respectively, and that they are entitled to deduct such losses for those respective years.  We must decide whether petitioners are entitled for each of the years at issue to deduct gambling losses in excess of the deduction allowed by respondent for each such year.

Section 165(d) permits a taxpayer to deduct losses from wagering transactions to the extent of the winnings from such transactions.  The taxpayer bears the burden of proving entitlement to such a deduction.  Schooler v. Commissioner, 68 T.C. 867, 869 (1977).  Moreover, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).  A taxpayer is required to maintain records sufficient to establish the amount of any deduction claimed.  Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

It is petitioners' position that the burden of proof with respect to the claimed gambling loss deductions at issue has shifted to respondent under section 7491(a).  That is because, according to petitioners, they "introduced credible evidence that

they suffered extensive gambling losses in 1999".[5] It is respondent's position that the burden of proof has not shifted to respondent under section 7491(a).

The burden of proof shifts to the Commissioner of Internal Revenue (Commissioner) with respect to the Commissioner's determination of a deficiency if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining any such deficiency and complies with the requirements of section 7491(a)(2), including the requirements, inter alia, that (1) the taxpayer has complied with the requirements of the Code to substantiate any item, and (2) the taxpayer has maintained all records required by the Code. See sec. 7491(a)(1), (2)(A) and (B).

On the record before us, we find that petitioners have not introduced credible evidence within the meaning of section 7491(a) with respect to the respective amounts of their claimed gambling losses for the years at issue and have not complied with the requirements of section 7491(a)(2)(A) and (B). On that record, we find that the burden of proof has not shifted to

---

[5]It is not clear whether petitioners are claiming that the burden of proof has shifted to respondent under sec. 7491(a) with respect to their claimed gambling loss deductions for both of their taxable years 1999 and 2000, or only with respect to the claimed gambling loss deduction for their taxable year 1999. In any event, as discussed below, we hold that the burden of proof has not shifted to respondent under sec. 7491(a) with respect to either year at issue.

respondent under section 7491(a) with respect to the claimed gambling loss deductions at issue.

We turn now to whether petitioners are entitled for each of the years at issue to a gambling loss deduction in excess of the deduction allowed by respondent for each such year.[6] To support their position that they are entitled to such a greater deduction for each year at issue, petitioners rely on: The testimony of Mr. Hartsock; the respective Harrah's substitute 1999 Forms W-2G with respect to August 13 and 14 and September 4, 1999; Mr. Hartsock's checks dated August 13, 1999, totaling $13,000 payable to Marina Associates; Mr. Hartsock's checks dated August 14, 1999, totaling $12,000 payable to Marina Associates; Mr. Hartsock's $5,100 check dated August 14, 1999, payable to T.T.M.A., and certain documents (workpapers) that petitioners prepared and that purport to show how petitioners estimated the respective amounts of money that they gambled and lost in slot machines at Harrah's on each of those dates.

Respondent counters that petitioners have failed to carry their burden of showing that they are entitled for each of the years at issue to a gambling loss deduction in excess of the deduction allowed by respondent for each such year. On the

---

[6]Petitioners acknowledge, as they must, that they are entitled for each of the years at issue to deduct gambling losses only to the extent of their gambling winnings for each such year. See sec. 165(d).

record before us, we agree with respondent.

Petitioners' focus at trial and on brief is on the gambling losses that they contend they incurred during the years at issue at Harrah's.[7] Mr. Hartsock testified that petitioners calculated their claimed gambling losses at Harrah's by using the minimum amount required to be wagered in each slot machine that they played at Harrah's as shown on the respective Harrah's substitute Forms W-2G with respect to August 13 and 14 and September 4, 1999, the respective times of gambling winnings as shown on such respective forms, and the respective amounts that they estimated they would have been able to wager within a minute in each such slot machine that they played at Harrah's if they had played two coins at one time.[8] In support of Mr. Hartsock's testimony,

---

[7]According to petitioners, "The gambling losses allowed by the Respondent for both years in question were those incurred at all of the casinos that the Petitioners gambled in during those years, except for Harrah's."

[8]As we understand the way in which petitioners calculated their claimed gambling losses at Harrah's, petitioners multiplied the number of minutes between gambling winnings at a $100 slot machine or a $25 slot machine, as reflected on the respective Harrah's substitute Forms W-2G with respect to Aug. 13 and 14 and Sept. 4, 1999, by the amount that they estimated they would have been able to wager within a minute in such a $100 slot machine or such a $25 slot machine if they had played two coins at one time. Mr. Hartsock testified that he would have been able to wager within a minute $1,200, "give or take $200", in a $100 slot machine and $300 in a $25 slot machine. Mr. Hartsock testified that petitioners reduced the amount so calculated to reflect that they would not have been constantly wagering in slot machines that they were playing because they would have stopped wagering to light up cigarettes, get drinks, or talk with others.

petitioners rely on, inter alia, certain workpapers that they prepared and that purport to show how they calculated the gambling losses that they contend they incurred at Harrah's during 1999.

We have serious reservations about the reliability of the self-serving and uncorroborated workpapers on which petitioners rely.[9]  We also have serious reservations about the reliability

---

[9]For example, one of the workpapers that petitioners prepared purports to show their estimate of the gambling losses that they incurred at Harrah's on Aug. 13 and 14, 1999.  The total gambling winnings shown on that workpaper for those dates are different from the total gambling winnings shown (1) on the respective Harrah's substitute Forms W-2G with respect to those dates and (2) on another workpaper that petitioners prepared and that purports to show the total of petitioners' gambling winnings at Harrah's on Aug. 13 and 14, 1999, as reflected on such respective forms with respect to Aug. 13 and 14, 1999, as well as other gambling winnings that petitioners claim they had at Harrah's on such dates and that are not reflected on such respective forms.

Moreover, one of the workpapers that petitioners prepared purports to show their estimate of the gambling losses that they incurred at Harrah's on Sept. 4, 1999.  The total gambling winnings shown on that workpaper for that date are different from the total gambling winnings shown on (1) Harrah's substitute Form W-2G with respect to Sept. 4, 1999, and (2) on another workpaper that petitioners prepared and that purports to show the total of petitioners' gambling winnings at Harrah's on Sept. 4, 1999, as reflected on Harrah's substitute Form W-2G with respect to that date, as well as other gambling winnings that petitioners claim they had at Harrah's on such date and that are not reflected on such form.

Another example of the unreliability of petitioners' workpapers is that one of those workpapers indicates that petitioners estimated that Mr. Hartsock wagered in a $25 slot machine, and lost before any reduction for time spent not wagering, $22,800 during what they computed to be a 19-minute period between 10:22 p.m. and 10:51 p.m. on Aug. 14, 1999.  However, the

(continued...)

of the methodology that petitioners contend they used, as reflected on such workpapers, to estimate the gambling losses that they claim they incurred at Harrah's on August 13 and 14 and September 4, 1999.[10]  We are unwilling to rely on Mr. Hartsock's self-serving and uncorroborated testimony and the self-serving and uncorroborated workpapers that petitioners prepared in order to establish that they incurred gambling losses at Harrah's on certain dates during 1999.  Petitioners presented no evidence in

---

[9](...continued)
time interval between 10:22 p.m. and 10:51 p.m. is 29 minutes, not 19 minutes.  Moreover, Mr. Hartsock testified that he would have been able to wager within a minute only $300 in a $25 slot machine, or at most $5,700 in a 19-minute period and at most $8,700 in a 29-minute period.

An additional example of the unreliability of petitioners' workpapers is that one of those workpapers indicates that petitioners estimated that Mr. Hartsock wagered in a $100 slot machine, and lost before any reduction for time spent not wagering, $42,000 during what they computed to be a 35-minute period between 1:35 a.m. and 2:00 a.m. on Sept. 5, 1999.  However, the time interval between 1:35 a.m. and 2:00 a.m. is 25 minutes, not 35 minutes.

[10]For example, petitioners have failed to establish that they gambled during each time interval between gambling winnings shown on the respective Harrah's substitute Forms W-2G with respect to Aug. 13 and 14 and Sept. 4, 1999, at the same slot machine from which they received gambling winnings at the end of each such time interval, as shown on such forms.  Nor have petitioners persuaded us that they would have been able to wager within a minute the respective amounts that they claim they wagered in a $100 slot machine (i.e., $1,200) and a $25 slot machine (i.e., $300).  In addition, petitioners did not provide a specific and acceptable explanation as to how they calculated the respective amounts of time that they assert they did not spend playing slot machines to smoke cigarettes, get drinks, and talk with others, which time they assert they used to reduce their claimed gambling losses at Harrah's.

support of their claim that they incurred gambling losses at
Harrah's during 2000.[11]

Based upon our examination of the entire record before us,
we find that petitioners have failed to carry their burden of
establishing that they are entitled for each of the years at
issue to a gambling loss deduction in excess of the deduction
allowed by respondent for each such year.

Accuracy-Related Penalty

Respondent determined that petitioners are liable for each
of the years at issue for the accuracy-related penalty under
section 6662(a) because of negligence or disregard of rules or
regulations under section 6662(b)(1).

The term "negligence" in section 6662(b)(1) includes any
failure to make a reasonable attempt to comply with the Code.
Sec. 6662(c).  Negligence has also been defined as a failure to
do what a reasonable person would do under the circumstances.

---

[11]Assuming arguendo that petitioners had carried their
burden of proof with respect to their claim that they had gam-
bling losses for each year at issue in excess of the gambling
losses allowed by respondent for each such year, on the record
before us, we find that petitioners have failed to provide
sufficient evidence on which the Court would be able to make an
estimate of the total amount of gambling losses sustained for
each such year.  Cf. Cohan v. Commissioner, 39 F.2d 540, 543-544
(2d Cir. 1930).  In this connection, we note that we find the
cases on which petitioners rely here and in which the Court
relied on Cohan to estimate the amount of gambling losses sus-
tained in each such case to be materially distinguishable from
the instant case and their reliance on those cases to be mis-
placed.

See <u>Leuhsler v. Commissioner</u>, 963 F.2d 907, 910 (6th Cir. 1992),
affg. T.C. Memo. 1991-179; <u>Antonides v. Commissioner</u>, 91 T.C.
686, 699 (1988), affd. 893 F.2d 656 (4th Cir. 1990).  The term
"disregard" includes any careless, reckless, or intentional
disregard.  Sec. 6662(c).

The accuracy-related penalty under section 6662(a) does not
apply to any portion of an underpayment if it is shown that there
was reasonable cause for, and that the taxpayer acted in good
faith with respect to, such portion.  Sec. 6664(c)(1).  The
determination whether the taxpayer acted with reasonable cause
and in good faith depends upon the pertinent facts and circum-
stances, including the taxpayer's efforts to assess such tax-
payer's proper tax liability, the knowledge and experience of the
taxpayer, and the reliance on the advice of a professional, such
as an accountant.  Sec. 1.6664-4(b)(1), Income Tax Regs.

Respondent has the burden of production under section
7491(c) with respect to the accuracy-related penalty under
section 6662.  To meet that burden, respondent must come forward
with sufficient evidence indicating that it is appropriate to
impose that penalty.  <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446
(2001).  Although respondent bears the burden of production with
respect to the accuracy-related penalty that respondent deter-
mined for petitioners' taxable years 1999 and 2000, respondent
"need not introduce evidence regarding reasonable cause * * * or

similar provisions. * * * the taxpayer bears the burden of proof with regard to those issues." Id.

In the instant case, petitioners' underpayment for each of the years at issue is attributable solely to their claimed gambling loss deduction for each such year. Petitioners concede that they did not keep the records required by the Code to substantiate each such loss deduction. Failure to keep adequate records is evidence not only of negligence, but also of intentional disregard of regulations. See sec. 1.6662-3(b)(1) and (2), Income Tax Regs.; see also Magnon v. Commissioner, 73 T.C. 980, 1008 (1980). On the record before us, we find that respondent has met respondent's burden of production under section 7491(c). On that record, we further find that petitioners have failed to carry their burden of showing that they were not negligent and did not disregard rules or regulations, or otherwise did what a reasonable person would do, with respect to the underpayment for each of the years at issue.

On the record before us, we also find that petitioners have failed to carry their burden of showing that there was reasonable cause for, and that they acted in good faith with respect to, the underpayment for each of the years at issue.[12] See sec.

_____

[12]On the instant record, we also find that petitioners have failed to carry their burden of showing that the respective underpayments for the years at issue are attributable to their reliance on a professional, such as an accountant. See sec.
(continued...)

6664(c)(1).

Based upon our examination of the entire record before us, we find that petitioners have failed to carry their burden of establishing that they are not liable for each of the years at issue for the accuracy-related penalty under section 6662(a).

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing and the concessions of respondent,

Decision will be entered under

Rule 155.

---

[12](...continued)
1.6664-4(b)(1), Income Tax Regs.